Tamica M. WEBSTER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0902–CR–78.

Court of Appeals of Indiana.

June 22, 2009.

Neil L. Weisman, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Tamica Webster appeals her conviction for Class C felony possession of cocaine. We reverse.

### Issue

Webster raises one issue, which we restate as whether the trial court properly admitted evidence obtained during an encounter with a police officer.

### Facts

On September 1, 2007, at 7:45 a.m., Webster was riding in a car that belonged to her and was driven by her boyfriend, Eddy Turner. Indiana State Police officer William Parchman was patrolling in South Bend, when he observed two cars speeding. One of the cars was the car Turner was driving. Trooper Parchman pulled over both vehicles. Before Turner stopped, however, he allowed Webster to get out of the car near the Pilot gas station where she worked. Turner then pulled behind Trooper Parchman's car and stopped. Webster stood at the corner, across the busy four-lane street, approximately sixty-five to seventy-five feet away,

watching Trooper Parchman conduct the traffic stop.

During the stop Turner indicated that he did not have a driver's license and could not find the vehicle registration. Thinking the registration might have been in Webster's purse, Trooper Parchman instructed Webster to come across the street. Webster complied, carrying a large flexible cloth drawstring purse in both hands. The bottom of the purse "appeared to be stretched," and Trooper Parchman thought it contained a gun. Tr. p. 11. Trooper Parchman instructed her not to put her hands in the purse and began to walk toward her. Trooper Parchman told Webster, "not to put her hands in her purse, that [he] needed to check the contents of her purse and then later see her ID." *Id.* at 12. Webster began to pull the drawstring open, Trooper Parchman again told her not put her hands in her purse, and Webster said she was getting her identification. Webster reached into her purse, and Trooper Parchman rushed toward her, grabbing her purse and her arm. Trooper Parchman asked Webster to release the purse, but Webster refused and tried to pull it away with her whole body. At that point, Trooper Parchman "took her to the ground," handcuffed her, and secured her purse. *Id.* at 13. While Webster was laying face down and handcuffed, Trooper Parchman opened the purse and found cocaine. Webster told Trooper Parchman that the cocaine was hers.

On September 5, 2007, the State charged Webster with Class C felony possession of cocaine. On January 8, 2008, Webster filed a motion to suppress the evidence obtained by Trooper Parchman. Following a hearing, the trial court denied her motion to suppress. In its order denying Webster's motion, the trial court stated:

Notwithstanding the Court's finding that Trooper Parchman had no legal right to search the Defendant's purse nor pat it down to determine the presence of a weapon, the Court further finds in keeping with the holding in *Cole v. State*, 878 N.E.2d 882, (Ind.App.2007) that the evidence seized by Trooper [sic] is admissible by reason of Defendant's forcible resistance to the officer's otherwise unlawful action in seizing the purse initially.

App. p. 23. Webster sought an interlocutory appeal, but we denied her request. A bench trial was conducted, and the trial court found Webster guilty as charged. Webster now appeals.

## Analysis

Webster argues that the evidence of the cocaine should not have been admitted because it violated her rights under the United States Constitution and the Indiana Constitution. Although Webster originally challenged the admissibility of the evidence through a motion to suppress, she now appeals challenging the admissibility of the evidence at trial. Regardless, our standard of review of rulings on the admissibility of evidence is the same whether the challenge is made by a pretrial motion to suppress or by trial objection. *Jackson v. State*, 890 N.E.2d 11, 15 (Ind.Ct.App.2008). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* "However, we must also consider the uncontested evidence favorable to the defendant." *Id.*

We resolve this case solely under the Indiana Constitution. Article 1, Section 11 of the Indiana Constitution tracks the language of the Fourth Amendment to the United States Constitution verbatim. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005). Nevertheless, "Indiana has ex-

plicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure." *Id.* The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Id.* Although there may be other relevant considerations under the circumstances, the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs. *Id.* at 361.

Here, the degree of concern that Webster had violated the law was low. Although Webster had been a passenger in a car that Trooper Parchman stopped for speeding, it appears to be undisputed that she got out of the car to go to work. Moreover, even when Trooper Parchman asked Webster to cross the four lane road and come to him, he did so because he thought she might have had the registration, not based on a suspicion that she was a participant in criminal activity. *See* Tr. p. 18.

As for his suspicion that the purse contained a gun, Trooper Parchman testified that when Webster was about halfway across the street, which would have been at least thirty feet away, he noticed that she was holding her purse with two hands and that "the bottom portion of the purse tended—appeared to be stretched." *Id.* at 11. Based on his "training and experience," Trooper Parchman thought there was a handgun in the purse. *Id.* Purses may contain a variety of objects that can cause them to bulge or stretch. In fact, Trooper Parchman agreed that "it's not unusual for a woman to have a cloth purse that is sagging[.]" *Id.* at 18. Trooper

Parchman's generalized concern that Webster was carrying a gun was clearly based on mere speculation. The fact that Webster held onto her purse and turned away from Trooper Parchman did not increase the level of suspicion so as to justify the warrantless search of the purse.

As for the second *Litchfield* factor, the degree of the intrusion was high. Webster was standing at least sixty-five feet away on the other side of a busy four-lane road when she complied with Trooper Parchman's request to come toward him. This in and of itself imposed on Webster's liberty. Further, when Webster put her hand into her purse, apparently to retrieve her identification, Trooper Parchman tried to grab the purse from her hands and ultimately "took her to the ground," handcuffed her, and searched her purse without a warrant. *Id.* at 13. This was a severe intrusion on Webster's ordinary activity. Finally, Trooper Parchman conducted a search of Webster's purse. Our supreme court has observed, "we believe that society accepts as objectively reasonable that persons have a legitimate expectation of privacy in their purses and other closed containers that normally hold highly personal items." *Krise v. State*, 746 N.E.2d 957, 970 (Ind.2001). In that sense, the search of Webster's purse imposed a high degree of intrusion on Webster's ordinary activities.

■ As for the extent of law enforcement need, we fully recognize and agree with the need of law enforcement officers to protect themselves from armed suspects. However, we cannot conclude that the concern for officer safety justifies the warrantless search of every purse that is stretched in a manner that suggests it could conceivably contain a gun. *See Litchfield*, 824 N.E.2d at 360 ("[T]he degree of intrusion may render a search unreasonable, even where law enforcement

needs are obviously present."). Once Trooper Parchman secured the purse, any gun that might have been in it posed little threat to his safety.

Based on the totality of the circumstances, we conclude that the degree of suspicion was low, that the degree of the intrusion was high, and that once the purse was secured any law enforcement need for the warrantless search was low. The warrantless search of Webster's purse was not reasonable, and evidence obtained therefrom must be suppressed. *See Grier v. State*, 868 N.E.2d 443, 445 (Ind.2007) (analyzing the Indiana Constitution and holding, "Evidence obtained as a result of an unconstitutional search must be suppressed."); *Brown v. State*, 653 N.E.2d 77, 80 (Ind.1995) ("The search of appellant's car in question in this case was unreasonable and our state constitution mandates that the evidence found as a result of such a search be suppressed.... Only by such suppression can the privacy of all Hoosiers be adequately protected.").

■ The State argues that the exclusionary rule does not apply here because, by forcibly resisting Trooper Parchman's efforts to take her purse from her, Webster committed resisting law enforcement. *See* Ind.Code § 35–44–3–3(a)(1). The State contends that Webster's "act of resisting law enforcement was an intervening act that purged the taint from any unconstitutional stop here." Appellee's Br. p. 12. The State relies on *Cole v. State*, 878 N.E.2d 882, 887 (Ind.Ct.App.2007), in which a panel of this court observed, "In some situations, the causal chain is sufficiently attenuated to dissipate any taint of an illegal stop, allowing the evidence seized during a search to be admitted." To determine whether the attenuation doctrine applies, we consider three factors: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the pres-

ence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.* (quotations and citations omitted).

First, we are not convinced that after we determine the police acted unreasonably under the Indiana Constitution, we then must determine whether the attenuation doctrine prevents the exclusionary rule from applying, and the State provides no specific argument regarding the application of the attenuation doctrine under the Indiana Constitution. We believe that a defendant's actions during a police encounter are considered as part of the totality of the circumstances in determining whether the police acted reasonably. *See Hardister v. State*, 849 N.E.2d 563, 573 (Ind.2006) ("The focus of the exclusionary rule under the Indiana Constitution is the reasonableness of police conduct."); *Brown*, 653 N.E.2d at 79 ("Admissibility is lawful if the court can declare the process reasonable.").

Even if after we determine that a defendant's Indiana constitutional rights are violated, we must determine whether the attenuation doctrine applies, we do not believe it applies in this case. In *Cole*, the defendant, who was assumed to have been the subject of an unconstitutional investigatory stop, engaged the police officers in a foot chase, broke free, and continued to run through backyards and alleys until he was apprehended. We concluded that Cole's crimes of resisting law enforcement "completely purged the taint from the unconstitutional investigatory stop." *Cole*, 878 N.E.2d at 888. That is not the case here. Even if Webster's clutching her purse and turning her body amounted to the crime of resisting law enforcement, her actions were not so sufficiently attenuated to dissipate any taint of the unconstitutional search. This is especially true when considering that even prior to Web-

ster's alleged resisting, Trooper Parchman instructed her that he "needed to check the contents of her purse." Tr. p. 12. Thus, Trooper Parchman clearly intended to search her purse regardless of whether she had resisted. The proper remedy for constitutional violation here is the exclusion of the evidence.

**Conclusion**

Trooper Parchman's warrantless search of Webster's purse violated her rights under Article 1, Section 11 of the Indiana Constitution. The evidence obtained as a result of the search should not have been admitted into evidence. We reverse.

Reversed.

MAY, J., concurs.

BAKER, C.J., dissents with separate opinion.

BAKER, Chief Judge, dissenting.

I respectfully dissent from the majority's determination that Trooper Parchman's warrantless search of Webster's purse violated her rights under Article 1, Section 11 of the Indiana Constitution.

As the majority points out, the legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. Op. at 291–92 (citing *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind.2005)). The *Litchfield* court also determined that the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred; 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities; and 3) the extent of law enforcement needs. 824 N.E.2d at 361.

At the outset, I acknowledge Trooper Parchman's testimony that "it's not unusual for a woman to have a cloth purse that is sagging[.]" Tr. p. 18. Moreover, I do not quarrel with the majority's observation that purses may contain "a variety of objects that can cause them to bulge or stretch." Op. at 292. However, I part ways with the conclusion that Trooper Parchman's concern that Webster was carrying a gun was based on "mere speculation." Op. at 292.

The evidence established that Webster held onto her purse and continued reaching inside it after Trooper Parchman instructed her—on at least two occasions—not to do so. Moreover, Webster continued clutching her purse, tightened her grip, and pulled it away from Trooper Parchman after he told her to release it. Supp. Tr. p. 12–13. When considering the circumstances here, including the bulge in Webster's purse and her actions, such as the continued disobedience of Trooper Parchman's demands that she not reach into the purse, I cannot agree with the majority's declaration that Trooper Parchman's level of suspicion could not have "increase[d]." Op. at 292.

In my view, all of these factors—coupled with the fact that the suspect vehicle dropped Webster off on the other side of the road—afforded Trooper Parchman with the reasonable suspicion that criminal activity was afoot. Moreover, the evidence supported Trooper Parchman's concern that Webster was carrying a gun in her purse. Although Trooper Parchman was not certain that Webster was in possession of a firearm, such certainty is not required. *See A.M. v. State*, 891 N.E.2d 146, 149 (Ind.Ct.App.2008) (holding that in conducting a reasonable search for weapons for the police officer's protection in accordance

with *Terry v. Ohio*,[1] the issue is whether a reasonably prudent person under the circumstances would be warranted in believing that his safety or that of others was in danger) (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968)).

Finally, when considering the remaining factors of the reasonableness test announced in *Litchfield*, it is apparent to me that the method of the search would have been only minimally intrusive. More specifically, had Webster handed Trooper Parchman the purse, he could have quickly examined it and determined whether it contained a weapon. Moreover, the evidence showed that there was a significant law enforcement need because the circumstances set forth above established that Trooper Parchman was concerned for his own safety. And, other than searching Webster's purse, Trooper Parchman would have had no other way of ascertaining whether Webster was carrying a weapon.

In sum, I believe that Trooper Parchman's actions were reasonable. As a result, the trial court did not abuse its discretion in admitting the cocaine into evidence and I would affirm Webster's conviction.

---

1. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889    (1968).