**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARRELL LAWRENCE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1110-CR-938 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1106-FB-43058

**August 7, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant/Cross-Appellee, Darrell Lawrence (Lawrence), appeals his conviction for two Counts of resisting law enforcement, Ind. Code § 35-44-3-3(a). Appellee-Plaintiff/Cross-Appellant, the State of Indiana, cross-appeals the trial court's involuntary dismissal of Count I, possession of cocaine, a Class B felony, I.C. § 35-48-4-6.

We reverse in part, dismiss in part, and remand.

## ISSUES

Lawrence raises one issue on appeal, which we restate as: Whether the evidence presented by the State to support his conviction for one Count of resisting law enforcement was improperly admitted as fruit of the poisonous tree.

On Cross-Appeal, the State presents one issue, which we restate as: Whether the trial court properly dismissed Count I, possession of cocaine, in accordance with Indiana Trial Rule 41(B).

## FACTS AND PROCEDURAL HISTORY

Around 12:30 p.m. on June 16, 2011, Susan Smith (Smith), the manager at the Pinnacle Square Apartments in Marion County, Indiana, called 911 because of a loud disturbance in the apartment's recreation area. She noted that there were a lot of people gathering who were loud and argumentative. She described the group as "a large group of black men and women." (Transcript p. 10). Smith did not see whether Lawrence was involved.

2

Several police officers responded to the 911 call at the apartment complex, which is known as a high crime area. When the City of Lawrence Police Officers Michael Evans (Officer Evans) and Ryan Romeril (Officer Romeril) arrived, they heard people yelling and saw Smith pointing to the northeast side of the complex. As the Officers began to walk toward that part of the complex, Officer Tom Ashcraft yelled at them that "they were running southwest through the courtyard." (Tr. p. 16). Officer Evans saw three black males, including Lawrence, walk hurriedly out of the courtyard. The Officer noticed that "[a]ll of them seemed to be trying to catch their breath," with one individual looking "visibly tired like he had been exerting himself somewhat." (Tr. pp. 16-17).

Officer Evans ordered the three males to stop and started questioning them. Lawrence told the Officers that he did not live at the apartment complex but was going to his girlfriend's house. However, Lawrence could not say where his girlfriend lived. Officer Romeril asked Lawrence for identification. Lawrence told the Officer that he did not have identification and he "immediately" started to move his hand towards his pockets. (Tr. p. 18). Officer Evans ordered him to put his hands in the air and told Lawrence that he was going to check and make sure that he did not have identification. Lawrence put his left hand up but kept his right hand by his pocket. Officer Evans grabbed Lawrence's right hand and moved it into the air. Officers Evans began a pat-down search. When he put his hands on Lawrence's right pant's pocket, Lawrence reached down and swatted his hand away. The Officer ordered Lawrence to keep his hand in the air; Lawrence complied and the pat-down search continued. Officer Evans felt what he believed to be little baggies; he reached into Lawrence's pocket and pulled

3

the tip of the baggie out. Lawrence swatted the baggie out of the Officer's hand and took off running.

Officer Romeril gave chase while yelling for Lawrence to stop. He repeated "Stop, police, or you will be tased." (Tr. p. 49). Lawrence stopped, laid down on the ground, and allowed Officer Romeril to handcuff him. The Officers recovered small, white bags from Lawrence's pocket.

On June 20, 2011, the State filed an Information charging Lawrence with Count I, possession of cocaine within 1,000 feet of a family housing complex, a Class B felony, I.C. § 35-48-4-6(b)(2); and Counts II & III, resisting law enforcement, Class A misdemeanors, I.C. § 35-44-3-3. On August 1, 2011, Lawrence filed a motion to suppress evidence obtained from the search and seizure of his person. On September 6, 2011, the trial court conducted a bench trial during which it also addressed Lawrence's motion to dismiss. During trial, the trial court sustained Lawrence's objection to the introduction of cocaine obtained during the search of his pockets. At the close of the evidence, the trial court involuntarily dismissed Count I pursuant to Ind. Trial Rule 41(B) as it found the Officers' *Terry* stop illegal but denied his motion to suppress the evidence related to the resisting law enforcement Counts as fruit of the poisonous tree. The trial court found Lawrence guilty of two Counts of resisting law enforcement. On September 19, 2011, the trial court sentenced Lawrence to one year executed on each Count, with sentences to run concurrently.

Lawrence now appeals and the State cross-appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

CROSS-APPEAL

Because the State presents us with a procedural question that is better suited to be analyzed prior to Lawrence's appeal, we will address the State's issue first. In its cross-appeal, filed April 16, 2012, the State asserts that "the trial court incorrectly excluded cocaine found during a *Terry* frisk" of Lawrence. (Appellee's Br. p. 9). Looking at the totality of the circumstances, the State claims that the *Terry* stop and subsequent search of Lawrence were reasonable and requests this court to reverse the trial court's exclusion of the cocaine and its dismissal of Count I. Lawrence responds to the State by filing a Verified Motion to Dismiss[1] the State's cross-appeal and by way of a reply brief. In essence, Lawrence contends that because Count I was involuntarily dismissed pursuant to T.R. 41(B), the State's cross-appeal can only proceed if authorized by I.C. § 35-38-4-2, which it is not.

When ruling on a motion for an involuntary dismissal in a bench trial, the trial court may reconcile, reject, accept or weigh the evidence and determine the credibility of the witnesses and thereby make an ultimate conclusion in the case based solely upon the evidence presented by the State. *Workman v. State*, 716 N.E.2d 445, 448 (Ind. 1999). A motion for involuntary dismissal in a criminal case should be granted if the State fails to prove the essential elements of the offense beyond a reasonable doubt. *Id*.

---

[1] Lawrence's Verified Motion to Dismiss was held in abeyance by our motions panel with the decision assigned to this writing panel. We will consolidate Lawrence's argument formulated in his Verified Motion with Lawrence's reply brief and address the issue in this opinion.

The right of the State to appeal from a criminal proceeding is strictly limited by authorization of statute. *State v. Smith*, 562 N.E.2d 1308, 1309 (Ind. Ct. App. 1990). Pursuant to Indiana Code section 35-38-4-2, appeals to this court may be taken by the State in the following cases:

> (1) From an order granting a motion to dismiss an indictment or information.
> (2) From an order or judgment for the defendant, upon his motion for discharge because of delay of his trial not caused by his act, or upon his plea of former jeopardy, presented and ruled upon prior to trial.
> (3) From an order granting a motion to correct errors.
> (4) Upon a question reserved by the state, if the defendant is acquitted.
> (5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution.
> (6) From an interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:
> > (A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;
> > (B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or
> > (C) the remedy by appeal after judgment is otherwise inadequate.

The State now asserts that its cross-appeal is authorized under the statute's first prong because the involuntary dismissal order was an order dismissing Count I of the Information. Alternatively, it claims that I.C. § 35-38-4-2(4) is applicable because the question was reserved by the State.

Indiana Code section 35-38-4-2(1) allows the State to appeal an order granting a motion to dismiss an indictment or information. However, as appropriately pointed out by Lawrence, here, no motion to dismiss was filed, rather, he had filed a motion to suppress. The trial court involuntarily dismissed Count I during the bench trial after

6

hearing the State's evidence but proceeded on Counts II and III. Even assuming, *arguendo*, the instant situation can be characterized as falling within section 1 of the Statute, the application of this section does not provide for the appeal of an order dismissing only one Count of the Information. *State v. Campos*, 845 N.E.2d 1074, 1076 (Ind. Ct. App. 2006), *reh'g denied, trans. denied* (a motion to dismiss an information must be a judgment which finally disposes of the whole case, not merely a ruling leaving other counts upon which the trial may proceed).

With respect to the application of I.C. § 35-38-4-2(4), which allows the State to appeal "[u]pon a question reserved by the [S]tate, if the defendant is acquitted," we reach a similar result. The purpose of this section, permitting appeals on questions reserved by the State, is to obtain opinions of law which shall declare a rule for the guidance of trial courts on questions likely to arise again in criminal proceedings. *State v. Luna*, 932 N.E.2d 210, 212 (Ind. Ct. App. 2010). However, when a defendant is acquitted and the State appeals a reserved question of law, only questions of law are considered by this court. *Id.* at 213. Consequently, factual determinations are not appropriate on appeal as a reserved question of law. *Id.*

The State now asserts that it is "only challenging the court's legal conclusion that reasonable suspicion did not exist to justify the *Terry* stop and frisk." (State's Response Motion, p. 4). By using the phrase "legal conclusion," the State apparently seeks to bring itself within the purview of questions of law, as envisioned by the statute. Obviously, the question of whether the State effected a valid *Terry* stop and subsequent frisk rests upon the facts surrounding this particular situation. *See State v. Campbell*, 905 N.E.2d 51, 54

7

(Ind. Ct. App. 2009) (to evaluate the validity of a stop, the totality of the circumstances must be considered). Therefore, the State does not present us with a legal question upon which it can avail itself of this appeal.

As the State is not allowed to appeal the trial court's involuntary dismissal of Count I, we need not reach the merits of the State's cross-appeal. Consequently, we dismiss the State's cross-appeal.

## APPEAL

In his appeal, Lawrence contends that the trial court abused its discretion when it admitted evidence that he hit Officer Evans' hand during the pat-down search.[2] Lawrence maintains the doctrine of the fruit of the poisonous tree excludes this evidence as it was a continuation of the unlawful *Terry* stop.

Although Lawrence initially challenged the admissibility of the evidence through a motion to suppress, he now challenges the admissibility of the evidence at trial. Regardless, our standard of review of rulings on the admissibility of evidence is the same whether the challenge is made by a pre-trial motion to suppress or by trial objection. *Jackson v. State*, 890 N.E.2d 11, 15 (Ind. Ct. App. 2008). We do not reweigh the evidence and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

---

[2] Lawrence only appeals his conviction of Count III, resisting law enforcement by resisting Officer Evans in the execution of his duties. Lawrence does not appear to appeal his conviction of Count II, resisting law enforcement by fleeing from Officer Romeril.

8

It is unclear whether Lawrence is pursuing his claim under the Fourth Amendment of the United States Constitution or is relying on Article I, Section 11 of the Indiana Constitution. However, regardless the doctrine under which we proceed, the outcome is the same.

Lawrence focuses on his conviction for resisting Officer Evans by forcible resistance, which provides that a person who "forcibly resists, obstructs, or interferes with a law enforcement officer while the officer is lawfully engaged in the execution of the officer's duties" commits resisting law enforcement. *See* I.C. § 35-44-3-3(a)(1). Indiana case law follows the modern interpretation of resisting law enforcement and establishes that a private citizen may not use force in resisting a peaceful arrest by an individual he knows, or had reason to know is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful. *Cole v. State*, 878 N.E.2d 882, 886-87 (Ind. Ct. App, 2007). This is because a citizen can seek remedy for a police officer's unwarranted and illegal intrusion into the citizen's private affairs by bringing a civil action in the courts against the officer and the governmental unit that the officer represents. *Id.* at 887.

Although the State relies on these principles to claim that even though the original stop might have been unlawful, Lawrence had no right to forcibly resist the pat-down by Officer Evans. In response, Lawrence focuses on the exclusionary rule, contending that the illegal *Terry* stop was not sufficiently attenuated to dissipate any taint that the stop carried onto the search of Lawrence's pant's pocket.

The exclusionary rule is a judicially created remedy designed to safeguard the right of the people to be free from unreasonable searches and seizures. *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). The doctrine protects citizens by deterring police misconduct by providing that evidence obtained through an illegal search and seizure is inadmissible at trial. *State v. Mason*, 829 N.E.2d 1010, 1019 (Ind. Ct. App. 2005). However, not all evidence is fruit of the poisonous tree and subject to suppression simply because it would not have come to light but for illegal police activity. *Quinn v. State*, 792 N.E.2d 597, 601 (Ind. Ct. App. 2003), *trans. denied*. Fourth Amendment jurisprudence has recognized an exception to the exclusionary rule in cases where the connection between the illegal police conduct and the subsequent discovery of evidence becomes so attenuated that the deterrent effect of the exclusionary rule no longer justified its cost. *Brown v. Illinois*, 422 U.S. 590, 609, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Specifically, in some situations, the causal chain is sufficiently attenuated to dissipate any taint of an illegal stop, allowing the evidence seized during a search to be admitted. *Quinn*, 792 N.E.2d at 601. In determining whether the attenuation doctrine applies, three factors are analyzed: "(1) the time elapsed between the illegality and the acquisition of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Id*. The important consideration in the third factor is whether the evidence came from the exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Id*.

Analyzing the first factor, we acknowledge that there was no time lapse between the illegal stop and the discovery of the cocaine. In fact, it is during the illegal stop that

10

Officer Evans frisked Lawrence and Lawrence pushed the Officer's hand away. With respect to the second factor, we cannot find any intervening factors that would dissipate the taint. As for the third factor, Officer Evans stopped Lawrence merely based on a report of loud argument in a purported high crime neighborhood. There is no evidence that Lawrence participated in the argument; rather, Lawrence was only stopped because he was walking through the apartment complex apparently out of breath. His resistance occurred simultaneously with the unconstitutional search, was a response to the police misconduct, and had a direct and immediate causal connection to this misconduct. As such, the pat-down by Officer Evans was not sufficiently attenuated to dissipate any taint of the illegal stop and therefore, the evidence of Lawrence's actions during the frisk cannot be admitted under the Fourth Amendment.

With respect to the Indiana Constitution, we recently held in *Trotter v. State*, 933 N.E.2d 572, 582 (Ind. 2010), that "the attenuation doctrine as currently exists as a separate analysis to circumvent the exclusionary rule for Fourth Amendment purposes has no application under the Indiana Constitution." In its analysis, the *Trotter* court, relying on *Webster v. State*, 908 N.E.2d 289, 293 (Ind. Ct. App. 2009), *trans. denied*, surmised that a defendant's actions during a police encounter are considered as part of the totality of the circumstances in determining whether the police acted reasonably and noted that our supreme court has declared that the focus of the exclusionary rule under the Indiana Constitution is the reasonableness of the police conduct. *Id.* at 581.

In *Webster*, the defendant was a passenger in a vehicle pulled over for speeding. *Webster*, 908 N.E.2d at 290. Before the vehicle was pulled over by the officer, the

11

vehicle stopped and the defendant exited the vehicle so she could go to work nearby. *Id.* The defendant watched the traffic stop from across the street. *Id.* The officer conducting the stop instructed the defendant to return to the vehicle because the officer thought the vehicle registration might be in her purse. *Id.* at 291. As the defendant crossed the street, the officer noticed the bottom of the purse appeared to be stretched as if to conceal a gun. *Id.* The officer began to approach the defendant telling her to not put her hands in her purse. *Id.* Nevertheless, the defendant began to reach in her purse, saying she was getting her ID, even though the officer told her again not to reach in her purse. *Id.* The officer ran to the defendant and grabbed her and her purse, telling the defendant to release the purse. *Id.* However, the defendant refused and began to pull away from the officer. *Id.* The officer took the defendant to the ground, handcuffed her, and seized the purse. *Id.* Upon opening the purse, the officer found cocaine. *Id.* The *Webster* court held that the search of the purse was unreasonable, concluding the officer's concern about the stretching of the purse was clearly based on mere speculation. *Id.* at 292.

Based on the totality of the circumstances before us, we find Officer Evans' search of Lawrence's pant's pocket to be unreasonable. Officer Evans stopped Lawrence based on a vague report of a loud discussion between a group of unidentified persons. Officer Evans saw Lawrence walking through the apartment complex, apparently out of breath, stopped Lawrence and asked for his identification. When Lawrence failed to produce any, Officer Evans insisted on doing a pat-down search. While patting down Lawrence, Lawrence pushed Officer Evans' hand away when it approached the vicinity of his pant's pocket, containing cocaine. Based on the totality of the circumstances, we conclude that

12

Lawrence's stop and subsequent pat-down search was not reasonable and evidence obtained therefrom must be suppressed. Consequently, we reverse Lawrence's conviction for Count III, resisting law enforcement by force, and remand to the trial court.

## CONCLUSION

Based on the foregoing, we conclude that the evidence presented by the State to support his conviction for resisting law enforcement was improperly admitted as fruit of the poisonous tree. We dismiss the State's Cross-appeal.

We reverse in part, and dismiss in part, and remand.

NAJAM, J. and DARDEN, S. J. concur