**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**JEFFREY A. BALDWIN**
**TYLER D. HELMOND**
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GREGORY JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1209-CR-709 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Peggy Ryan Hart, Master Commissioner
Cause No. 49G20-1104-FA-027007

**May 16, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Gregory Johnson appeals his convictions for Class A felony dealing in cocaine and Class A felony dealing in a narcotic drug. He contends that the trial court erred in admitting the drugs found in his car into evidence because they were the result of an unconstitutional search and seizure. Finding that the search and seizure did not violate the Indiana or United States constitution, we affirm.

## Facts and Procedural History

In the weeks leading up to April 18, 2011, James McCune, a loss-prevention officer at K-Mart at 7425 East Washington Street in Indianapolis, noticed a black Camaro with the same driver in the parking lot about two or three times per week. Tr. p. 150, 170-71. The same man would also approach and enter the car each time, leaving in under a minute. *Id.* at 153. Indianapolis Metropolitan Police Department Officer Joseph Beasley, a friend of McCune, was at the K-Mart to investigate a shoplifting before April 18, 2011, and also observed the black Camaro in the parking lot. He saw the same man approach and enter the car as well. He saw a hand-to-hand exchange between the driver and the man, and then after one to two minutes, the man left. *Id.* at 85. Officer Beasley was unable to investigate the car because of the shoplifting he was there to investigate, so he told McCune to call him on his cell phone if he ever saw the black Camaro return and the same man get into the car. *Id.* at 86.

On April 18, 2011, McCune saw the black Camaro in the K-Mart parking lot again and called Officer Beasley to notify him. Officer Beasley asked for assistance on a narcotics investigation over his police radio, and IMPD Patrol Officer Stacie Riojas was

dispatched to the scene to assist him. At the scene, the same man entered the black Camaro, and seconds later Officer Beasley arrived in the parking lot. The man, later identified as Jason Rose, got out of the car approximately thirty seconds after he got into the car and began to walk away. State's Ex. 1. Officer Beasley turned on his emergency lights, and Officer Riojas arrived at the scene. Officer Riojas stopped Rose as he was walking away, and Officer Beasley ordered the driver out of the black Camaro. The driver was identified as Johnson, and he was handcuffed and patted down.

As Officer Riojas stopped Rose, he tossed a package wrapped in aluminum foil onto the ground underneath her vehicle. Both McCune and another K-Mart security officer, Lori Sizemore, saw Rose throw the package underneath the vehicle and informed the officers. Officer Riojas retrieved the package and gave it to Officer Beasley. Based on his training and experience, Officer Beasley concluded that the package likely contained heroin; he heat-sealed and collected the package as evidence.

After handcuffing and patting Johnson down, Officer Beasley informed him of his *Miranda* rights and asked if he could search the black Camaro; Johnson refused. Johnson also said that he understood his rights and that he had no guns or weapons in the car. Officer Beasley then called for a K-9 officer, and Lawrence Police Department Officer John Clark responded to the scene with his dog, Rudy, forty minutes later. Rudy is certified in narcotics and is trained to detect marijuana, cocaine, crack cocaine, heroin, and methamphetamine. When Rudy detects one of those controlled substances, he "alerts" Officer Clark by sitting. Rudy alerted both by the driver's door and the passenger's door of the black Camaro. Once inside the car, Rudy alerted at a cup holder

3

that held a jewelry box. Officer Clark told the other officers that there was something inside the jewelry box. Officer Beasley looked inside the jewelry box and found individually wrapped foil packages suspected of containing narcotics, similar to the package that Rose had tossed under Officer Riojas's vehicle. Officer Beasley then called in a narcotics detective.

IMPD Detective Joshua Harpe arrived at the scene and took over as the lead detective. Officer Beasley informed him that he had read Johnson his *Miranda* rights, and Detective Harpe asked Johnson if he was selling drugs. Johnson responded, "it is what it is," and also told Harpe that he had some heroin in his coat that was inside the car.[1] Tr. p. 349, 364. The police found a leather jacket inside the car that had three more bags of narcotics in the pocket. Five hundred and fifty dollars in cash was also found on Johnson's person and in his car.

The amount of narcotics, money, and lack of paraphernalia was determined to be consistent with someone who was dealing rather than using the drugs. *Id.* at 355-60. In total, the drug evidence collected included four packages of drugs—16.9234 grams of cocaine, 4.0186 grams of heroin, 2.5452 grams of cocaine, and 7.4716 grams of cocaine—in the black Camaro, and 0.4048 grams of heroin in the foil package dropped on the ground by Rose. State's Ex. 14-17.

The State charged Johnson with Class A felony dealing in cocaine, Class C felony possession of cocaine, two counts of Class A felony dealing in a narcotic drug, and Class C felony possession of a narcotic drug. Johnson moved to suppress the drugs that were

---

[1] Johnson referred to the heroin by its slang term, "boy." Tr. p. 352.

4

found in his car, and the trial court denied the motion after a suppression hearing. A bench trial was held, and Johnson again objected to the admission of the drug evidence, arguing that it was the product of an illegal search and seizure. The trial court overruled his objections and found Johnson guilty of all but one count of Class A felony dealing in a narcotic drug. The trial court merged the convictions to avoid double-jeopardy issues and entered judgment on one Class A felony dealing in cocaine count and one Class A felony dealing in a narcotic drug count. The trial court sentenced Johnson to thirty years on each count, to run concurrently.

Johnson now appeals.

## Discussion and Decision

Johnson contends that the trial court abused its discretion by admitting the drug evidence at trial. A trial court has broad discretion in ruling on the admission or exclusion of evidence. *Kimbrough v. State*, 911 N.E.2d 621, 631 (Ind. Ct. App. 2009). The trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Id.* Error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected. Ind. Evidence Rule 103.

Johnson contends that the trial court abused its discretion in admitting the drug evidence because it was the product of an unconstitutional search and seizure, in violation of both the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

5

We first note that we are confining our analysis to the few minutes between when Johnson was asked to exit his car and was handcuffed and patted down by Officer Beasley and when Rose tossed the package wrapped in aluminum foil onto the ground underneath Officer Riojas's vehicle. Once Rose tossed the package on the ground, Officer Beasley had probable cause to conduct a warrantless search of the vehicle. Due to his experience and training as a police officer, Officer Beasley believed that the aluminum foil package contained narcotics, specifically heroin, so he had probable cause to believe that a crime had just taken place. We therefore only must determine if Officer Beasley's initial stop, pat-down, and seizure of Johnson ran afoul of the Fourth Amendment or Article 1, Section 11 of the Indiana Constitution.

## I. United States Constitution

The Fourth Amendment to the United States Constitution provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

The Fourth Amendment is made applicable to the States via the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 656 (1961). Evidence obtained in violation of a defendant's Fourth Amendment rights may not be introduced against him at trial. *Id.* at 648-60.

Johnson contends that he was arrested when Officer Beasley ordered him out of his car and handcuffed him. He argues that there was no probable cause for the arrest, so he was the subject of an unconstitutional search and seizure. We disagree.

6

"Searches performed by government officials without warrants are per se unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). When a warrantless search is conducted, the State must show that an exception to the warrant requirement existed at the time of the search. *Patterson v. State*, 958 N.E.2d 478, 482 (Ind. Ct. App. 2011).

One such exception to the warrant requirement is a *Terry* stop, during which a police officer may conduct an investigatory stop if he has a "reasonably articulable suspicion of criminal activity." *State v. Renzulli*, 958 N.E.2d 1143, 1146 (Ind. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). Reasonable suspicion necessitates that there is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Woodson v. State*, 960 N.E.2d 224, 227 (Ind. Ct. App. 2012) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). There is not a set rule as to what constitutes "reasonable suspicion," but we "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Cortez*, 449 U.S. at 417-18). Johnson argues that Officer Beasley's actions were an arrest and not a *Terry* stop, and he points to the fact that he was handcuffed. While handcuffing a person may turn an investigatory stop into an arrest, we again must examine the totality of the circumstances to determine how to classify the officer's actions. *Reinhart v. State*, 930 N.E.2d 42, 46 (Ind. Ct. App. 2010).

As part of a valid *Terry* stop, a police officer may take steps to ensure his own safety, including ordering a person out of his vehicle, *id.*, and conducting a warrantless search for weapons. *Wright v. State*, 766 N.E.2d 1223, 1232 (Ind. Ct. App. 2002). "The officer need not be absolutely certain that the individual is armed, but only that a reasonably prudent person in the same circumstances would be warranted in the belief that his safety or that of another was in danger." *Id.* In this case, Officer Beasley believed that he was coming across a drug deal that had just taken place. He and McCune both had seen the same car with the same people involved in a hand-to-hand transaction in the same location before. Each time, the man entered the black Camaro for a short period of time and immediately got out of the car. Based on his experience, Officer Beasley understood the situation to be a drug deal. The Seventh Circuit has called drug dealing "a 'crime infused with violence,'" *United States v. Brown*, 188 F.3d 860, 865 (7th Cir. 1999) (quoting *United States v. Gambrell*, 178 F.3d 927, 929 (7th Cir. 1999)), so it was not unreasonable for Officer Beasley to conduct a *Terry* stop for his own safety in this situation.

As far as Johnson being handcuffed, "the Seventh Circuit, along with other states that have addressed this exact issue, have determined, that after considering all of the surrounding circumstances the mere use of handcuffs does not convert a *Terry* stop into a full arrest so as to require probable cause." *Wright*, 766 N.E.2d at 1233; *see also Reinhart*, 930 N.E.2d at 47; *Willis v. State*, 907 N.E.2d 541, 546 (Ind. Ct. App. 2009). Given the fact that Officer Beasley reasonably believed that he was witnessing a drug deal, which is a potentially violent crime, we find that based on the totality of the

8

circumstances, placing Johnson in handcuffs did not rise to the level of an arrest. Officer Beasley was acting in a reasonable way to ensure his safety in the situation while he conducted a permissible *Terry* stop.

We therefore find that Officer Beasley conducted a *Terry* stop of Johnson and he had the reasonable suspicion necessary to do so in this situation. He was not required to have probable cause to conduct the pat-down, only reasonable suspicion, and placing Johnson in handcuffs was, in this instance, reasonable to ensure police officer safety. This conduct did not violate the Fourth Amendment, and as a result, the trial court did not err by admitting the drugs found in Johnson's car into evidence.

## II. Indiana Constitution

Johnson also argues that Officer Beasley's search and seizure violated Article 1, Section 11 of the Indiana Constitution, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

The language of this provision tracks the Fourth Amendment almost verbatim; however, the analysis differs from the Fourth Amendment analysis. *Webster v. State*, 908 N.E.2d 289, 291-92 (Ind. 2009). The legality of a governmental search under the Indiana Constitution turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Id.* at 292. Although we recognize there may be other relevant considerations under the circumstances, we have explained the reasonableness of a search or seizure under the Indiana Constitution as turning on a balance of: "1) the

9

degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion that the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.*

In this case, we find that Officer Beasley's initial search and seizure of Johnson was reasonable under the totality of the circumstances. The degree of concern or suspicion that a violation, specifically a drug deal, had occurred was high. Officer Beasley was aware that the same car, with the same man approaching and entering the car, and the same suspected driver had previously been in the K-Mart parking lot before and conducted a suspected drug deal. Tr. p. 245-52. The same people were seen engaging in the same behavior in the same parking lot again, so Officer Beasley suspected that he was witnessing another drug deal. *Id.* Finally, Rose left the scene when Officer Beasley arrived with his emergency lights activated. *Id.* at 250-51. All of these facts, taken together, show that there was a high degree of concern that a violation was taking place.

We also find the degree of intrusion into Johnson's ordinary activities to be reasonable for the facts of the situation as known by Officer Beasley. Officer Beasley handcuffed Johnson and conducted a pat-down for weapons for officer safety when he believed that he had come across a drug deal taking place. *Id.* at 252-53. Johnson was only detained for a few minutes before Rose tossed the aluminum package under Officer Riojas's car and provided probable cause to search Johnson's vehicle. State's Ex. 11. A short intrusion for a pat-down when a police officer believed he had witnessed a drug deal was a reasonable intrusion into Johnson's ordinary activities.

10

Finally, we also find that Johnson's search and seizure was reasonable in light of law enforcement's needs. Officer Beasley was stopping an individual he suspected of conducting a drug deal. Tr. p. 252. Officer Beasley ordered Johnson out of his car and patted him down, actions that we find to be reasonable for a police officer to take when he believes that he has come across an individual who has just committed a crime.

After viewing all of the circumstances and balancing the relevant factors, we find that Officer Beasley's initial detention of Johnson was reasonable and did not violate Article 1, Section 11 of the Indiana Constitution. The trial court therefore did not err by admitting the drugs found in Johnson's car into evidence.

Affirmed.

KIRSCH, J., concurs.

PYLE, J., dissents without opinion.