. CRONE, Judge,
dissenting.
[36] In reversing a criminal defendant’s conviction almost a century ago, the Indiana Supreme Court stated, “‘Refusal to receive evidence when illegally seized tends to discourage the practice and thereby protects the innocent as well as the guilty from obnoxious and disgraceful invasions of their right to privacy and retains the Fourth Amendment and' similar state constitutional provisions unimpaired.’ ” Evans v. State, 198 Ind. 487, 490, 154 N.E. 280, 281 (1926) (quoting Cornelius on Search and Seizure at 56).[4] In this case, Jacobs is undeniably guilty .of carrying a handgun without a license. But in holding that the police did not invade -his right to privacy by ordering him to the ground and handcuffing him based on a tenuous suspicion of truancy, the majority has impaired the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution for innocent Hoosiers who wish to exercise their constitutional right to walk away from approaching officers who have no valid reason to detain them. See Gaddie v. State, 10 N.E.3d 1249, 1254 (Ind.2014) (“A person approached by police ‘need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so.... ’ ”) (quoting Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L,Ed.2d 229 (1983)).[5]
Fourth Amendment
[37] “The Fourth Amendment to the U.S. Constitution protects persons from unreasonable search and seizure by prohibiting, as a general rule, searches and seizures conducted without a warrant supported by probable cause.” Clark, 994 at 260. “When a defendant challenges a war-rantless search, it is the State’s burden to prove the search fell within an exception to *1265 the warrant requirement.” J.K. v. State, 8 N.E.3d 222, 228 (Ind.Ct.App.2014). A person may be detained without a warrant on less than probable cause if the officer has a justifiable suspicion that “the suspect has committed a crime, providing the intrusiveness and nature of the seizure is. ‘reasonably related in scope to the justification for [its] initiation. The officer must be able to point to specific and articulable facts which reasonably, warrant the intrusion upon the individual’s right of privacy.’ ” Manigault v. State, 881 N.E.2d 679, 685 (Ind.Ct.App.2008) (alteration in,Mani-gault ) (quoting Terry, 392 U.S. at 21, 88 5.Ct. 1868). “Reasonable suspicion entails at least a minimal level of objective justification that is more than an unparticular-ized suspicion or hunch.” Pugh v. State, 52 N.E.3d 955, 964-65 (Ind.Ct.App.2016), trans. denied. “Even if justified, a reasonable suspicion only permits the officer to temporarily freeze the situation for inquiry and does not give him all the rights attendant to an arrest.” Burkett v. State, 736 N.E.2d 304, 306 (Ind.Ct.App.2000).
[38] The only arguably relevant facts that Officers Smith and Casavan were able to articulate as a basis for invading Jacobs’s privacy are that he appeared to be a juvenile who should have been in school that afternoon,[6] walked away from two marked vehicles that approached him, and disregarded Officer Smith’s order to stop. Officer Smith was conducting surveillance based on reports that allegedly gang-affiliated juveniles wearing red. clothing had fired gunshots, in the area several days earlier. He watched Jacobs for several hours and saw nothing to indicate that Jacobs had a gun or was engaging in any gang-related or criminal activity. Jacobs wore no red clothing that day,[7] nor did he flee from the park ranger or the police officers. ' Instead, Jacobs merely walked quickly away from them, which was his constitutional right as well as an-understandable response in light of well-publicized encounters between law enforcement authorities and other young African-American males. This Court has previously stated that “[t]he color of one’s skin, the neighborhood one happens to be in, and the fact that one turns away from the police are not sufficient,- individually; or collectively, to establish a reasonable suspicion of criminal activity.” Tumblin v. State, 664 N.E.2d 783, 785 (Ind.Ct.App.1996) (citing Williams v. State, 477 N.E.2d 96, 99 (Ind.1985)).[8] ■
[39] binder the Fourth Amendment, “[t]he baseline rule is' that a search or seizure is ordinarily unreasonable absent individualized suspicion of criminal activity.” State v. Gerschoffer, 763 N.E.2d 960, 964 (Ind.2002) (emphasis added) (citing City of Indianapolis v. Edmond, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000)). “[M]erely ‘looking suspicious’ is not sufficient to overcome Fourth Amendment protections against • arbitrary and abusive police practices.” Stalling, 713 *1266 N.E.2d at 925 (quoting Tumblin, 664 N.E.2d at 784). At most, the officers reasonably could have suspected that Jacobs was truant from school, which is a status offense, not a criminal offense.[9] The State cites no caselaw holding that this suspicion was a constitutionally permissible ■ reason for stopping Jacobs to investigate, but assuming for argument’s sake that it was, the stop should have been no more intrusive than asking him for identification, to determine his age. At that point, the officers had no reason to fear for their safety and no individualized suspicion that Jacobs had committed a crime or possessed a weapon of any kind. Nevertheless, they ordered Jacobs, to the ground and handcuffed him.
[40] The U.S. Supreme Court has stated that “a seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution.” Illinois v. Caballes, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). I am doubtful that any seizure of Jacobs was lawful under the totality of the circumstances, but I am convinced that the overly forceful manner of its execution unreasonably infringed his Fourth Amendment right to be secure from unreasonable seizures.[10] Jacobs’s handgun was obtained as a direct result of this illegality and therefore should have been excluded as fruit of the poisonous tree. See, e.g., Wilson v. State, 754 N.E.2d 950, 956 (Ind.Ct.App.2001) (explaining fruit of the poisonous tree doctrine).[11]
Article 1, Section 11
[41] The purpose of Article 1, Section 11 of the Indiana Constitution “is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. This provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure.” Perez v. State, 981 N.E.2d 1242, 1251 (Ind.Ct.App.2013) (citation omitted), trans. denied. I respectfully disagree with the majority’s determination that the officers’ conduct in this case was reasonable under the three-part Litchfield analysis.
[42] First, the officers’ degree of concern, suspicion, or knowledge that Jacobs had committed a violation of any kind was low. At most, he appeared to be a juvenile who should have been in school, and he walked away from marked vehicles and disregarded Officer Smith’s order to stop; as an adult who was unaware of the officers’ suspicions that he was a truant, Jacobs reasonably thought that he had every right to do this. He may have been in a high-crime area near suspected gang members and truant juveniles, but the officers *1267 never saw him engage in any gang-related or criminal activity and never suspected that he had a weapon until after they seized and handcuffed him.
[43] Second, the majority properly concedes that the degree of police intrusion was high, although it unfairly blames him for the amount of force used to subdue him. Instead of briefly detaining Jacobs and asking him for proof of age to dispel their suspicions of truancy, the officers ordered him to the ground and handcuffed him. This was unnecessary and unreasonable.
[44] And third, the extent of law enforcement needs in this case was minimal. Officer Smith was on the lookout for suspected gang members wearing red clothing who had allegedly fired gunshots in the apartment complex several days earlier. He had no prior contact with Jacobs, who was not wearing red, did not appear to have a gun, and did not engage in any gang-related or - criminal activity during the several hours of police surveillance. At most, Jacobs appeared to be a truant juvenile who had walked away from two marked vehicles, which would be understandable for someone guilty of a status offense (which he was not) as well as prudent for any young African-American male who wished to avoid a confrontation with law enforcement/[12] I find it both interesting and troubling that after watching the people in the park for several hours and observing no criminal activity, Officer Smith suddenly became concerned that some of them might be truant from school. His alleged concern about truancy is undercut by the fact that he waited until after regular school hours to apprehend them.[13]
[45] In my view, the balance of these factors weighs decisively in Jacobs’s favor, and therefore his seizure was unreasonable under Article 1, Section 11 of the Indiana Constitution. The trial court should have excluded the handgun that was obtained as a result of the unconstitutional seizure. See Webster v. State, 908 N.E.2d 289, 293 (Ind.Ct.App.2009) (acknowledging exclusionary rule under Indiana Constitution), tram, denied. Consequently, I would reverse Jacobs’s misdemeanor conviction for carrying a handgun without a license.

. See also Minnesota v. Carter, 525 U.S. 83, 109, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (“If the illegality of the activity made constitutional an otherwise unconstitutional search, such Fourth Amendment protection, reserved for the innocent only, would have little force in regulating police behavior toward either the innocent or the guilty.”) (Ginsburg, J., dissenting); United States v. Quinn, 751 F.2d 980, 981 (9th Cir.1984) (“The Fourth Amendment protects the guilty because only by doing so can the innocent be protected-. The innocent are not mere incidental beneficiaries of an amendment designed to protect the guilty. The innocent are its primary beneficiaries; the reasonableness of any expectation of privacy should be ascertained from their standpoint.”) (Sneed, J., dissenting), cert, dismissed (1986).

. See also Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) ("The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness.... They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.”) (Brandéis, J., dissenting).

. Officer Smith did not specifically state that Jacobs himself appeared to be a juvenile; he merely referred to Jacobs “and another juvenile[,]” apparently implying that Jacobs also was a juvenile; which he was not. Tr. at 8 (emphasis added).

. Officer Smith testified only that Jacobs had a red t-shirt slung over his shoulder for an unspecified length of time, There is no evidence that Jacobs owned the t-shirt or had it in his possession when the officers stopped him.

.The majority finds it “suspicious” that “Jacobs, who' appeared' to be a juvenile, was congregating for a relatively lengthy period of time with suspected gang members in a park during a time of day that juveniles should have been in school....” Op. at 1261. Under that logic, the same could be said for the same group of juveniles waiting on á school bus in that neighborhood.

. The officers did not testify as to how old ■ they believed Jacobs to be. With certain limited exceptions for those at least sixteen years of age, students are required to attend school until they either graduate or turn eighteen, whichever occurs first. Ind.Code § 20-33-2-6.

. “[P]lacing a person in handcuffs may convert an investigatory stop into an arrest depending upon the totality of the circumstances,” Reinhart v. State, 930 N.E.2d 42, 46 (Ind.Ct.App.2010). It is unnecessary to determine whether handcuffing Jacobs converted his stop into an arrest, but assuming that it did, the arrest would have been illegal due to ' a lack of probable cause that he committed an offense of any kind." Cf. State v. Stevens, 33 N.E.3d 1200, 1204-05 (Ind.Ct.App.2015) ("Probable cause to arrest exists where the facts and circumstances within the knowledge of an officer are sufficient to warrant a belief by a person of reasonable caution that an offense has been committed and that the person to be arrested committed it.”), trans. denied.

.Any suggestion that the officers would have seen Jacobs's handgun in his pocket during a less intrusive seizure is pure speculation.

. In concluding its Litchfield analysis, the majority gratuitously notes that Jacobs lied to Officer Casavan about having a handgun in his pocket. This fact is irrelevant to the reasonableness of Jacobs’s seizure under the Indiana Constitution.

. Therefore, it likely would have been impossible for the officers to comply with the dictates of Indiana Code Section 20-33-2-3 if Jacobs had actually been truant. See Ind. Code § 20-33-2-23 (providing that police officer "may take into custody any child ... who is required to attend school ..and ... is found during school hours ... in a public place.... [T]he officer shall immediately deliver the child to the principal of the ,.. school in which the child is enrolled.”). The circumstances surrounding the stop militate heavily in favor of a finding that it was pretex-tual.