Jerome K. JACKSON, Jr., Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A02–0802–CR–114.

Court of Appeals of Indiana.

July 11, 2008.

Brent R. Dechert, Howard County Deputy Public Defender, Kokomo, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Jerome Jackson, Jr. ("Jackson") was convicted in Howard Superior Court of Class B felony possession of cocaine and Class B misdemeanor false informing. Jackson appeals and presents two issues, which we restate as:

I. Whether the trial court erred in admitting evidence obtained as a result of an inventory search of the vehicle in which Jackson was a passenger; and

II. Whether the trial court erred in refusing to give two jury instructions tendered by Jackson.

We affirm.

### Facts and Procedural History

On January 3, 2007, Kokomo Police Officer Jason Burton ("Officer Burton") was on patrol when he observed the car in front of him run a red light. Officer Burton activated his lights and eventually his siren to get the car to pull over. The car did not immediately stop but traveled two to three blocks before pulling into the parking lot of an apartment complex, where it stopped in a parking space. The parking lot is located within 1,000 feet of a school. After the car had parked, the driver of the car, David Haulcy ("Haulcy"), started to get out of the car. Officer Burton ordered him to stay in the car and approached the driver's side door. As he did, Officer Burton noticed that the license plate on the car had expired. Officer Burton contacted the police dispatch, which confirmed that the plate was expired and further informed him that the car was registered to a Zearlan Whitfield. There was no indication that the car had been stolen. Officer Burton asked for consent to search the car, but Haulcy indicated that he should ask the owner of the car for such consent. Because the car had expired plates, Officer Burton requested a truck to tow the vehicle away.

As Officer Burton spoke with Haulcy, Kokomo Police Officer Brian Hunt ("Officer Hunt") arrived and began to question defendant Jackson, who was in the passenger seat. Officer Hunt asked Jackson for identification, which Jackson claimed not to have on him. Officer Hunt then asked Jackson to step outside the car and asked him what his name was. Jackson then provided Officer Hunt with false information about his identity.

Because the car was being towed, Officer Burton conducted an onsite inventory of the vehicle and found in the open center console a plastic baggie containing what was later confirmed to be over seven grams of cocaine. Officer Burton then informed Jackson that he was being arrested because of the contraband in the car. Officer Hunt then placed Jackson in handcuffs and searched him. This search revealed a driver's license with Jackson's true identity. After a field test indicated that the substance in the car was cocaine, Officer Hunt took Jackson to the jail.

While being booked into the jail, another officer found another baggie containing over four grams of cocaine hidden on Jackson's person.

On January 5, 2007, the State charged Jackson with Class A felony dealing in cocaine, Class B felony possession of cocaine, and Class B misdemeanor false informing. On April 11, 2007, Jackson filed a motion to suppress the evidence seized as a result of the stop. Following a hearing, the trial court denied the motion to suppress on June 22, 2007. A jury trial was held on October 26, 29, and 30. At the trial, Jackson tendered two proposed final jury instructions regarding statutory defenses to the charges of possession of cocaine within 1,000 feet of a school. The trial court refused to give these instructions to the jury. The jury found Jackson not guilty of Class A felony dealing in cocaine, but guilty of the remaining two charges. Jackson now appeals.

### I. Admission of Evidence

#### A. Standard of Review

■ Jackson first claims that the inventory search of the car in which he was a passenger was improper and that the trial court therefore erred in denying his motion to suppress. We note, however, that Jackson did not file an interlocutory appeal of the trial court's denial of his motion to suppress. He instead appeals following his conviction and sentence. As such, his argument is more properly framed as whether the trial court erred in the introduction of the evidence obtained as a result of the challenged search. *See Hirshey v. State*, 852 N.E.2d 1008, 1012 (Ind.Ct.App.2006), *trans. denied*. Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-

trial motion to suppress or by trial objection: we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Id.* at 1012. However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

#### B. Waiver

■ As a threshold issue, the State argues that Jackson failed to preserve his claim of error by failing to properly object to the evidence he now claims was improperly admitted. It is well established that a motion to suppress is insufficient to preserve error for appeal. *Green v. State*, 753 N.E.2d 52, 59 (Ind.Ct.App.2001), *trans. denied*. A defendant must instead reassert his objection at trial contemporaneously with the introduction of the evidence to preserve the error for appeal. *Id.*

■ Here, Jackson did not object to the introduction of the cocaine seized from the car on grounds that the inventory was improper. He did, however, object to Officer Burton's testimony regarding what he found during the inventory of the car, i.e. the plastic baggie containing what was later identified as cocaine. Although we might be justified in saying that Jackson failed to preserve any error with regard to the introduction of the baggie into evidence, this baggie was connected to Jackson through Officer Burton's testimony. We therefore decline to say that Jackson may not now challenge the inventory search.

#### C. "Standing" to Challenge

■ Jackson first argues that the trial court properly found that he had "standing"[1] to challenge the search of the car in

---

1. As this court has noted before, the United States Supreme Court has rejected the rubric of "standing," and determined that the definition of Fourth Amendment rights is " 'more properly placed within the purview of substantive Fourth Amendment law than within

which he was only a passenger. The State counters by arguing that, as a passenger in a car owned by another, Jackson cannot now challenge the search of the car. Both parties cite this court's opinion in *Campos v. State*, 867 N.E.2d 676 (Ind.Ct.App.2007) in support of their arguments. However, after the State filed its appellee's brief in the present case, our supreme court granted transfer in *Campos*. See *Campos v. State*, 885 N.E.2d 590, 596 (Ind.2008).

 In its decision in *Campos*, our supreme court addressed the issue of the ability of a passenger in a car to challenge the constitutionality of the search of that car, first noting that standing to challenge the search or seizure under Article 1, Section 11 of the Indiana Constitution differs in some respects from standing to assert a Fourth Amendment claim.[2] *Id.* at 598. Because this difference was not at issue in the question of whether a passenger in a car owned by another could challenge a search of the car, the court held that "federal precedent addressing standing of a passenger asserting an interest in a searched vehicle is equally applicable under the Indiana Constitution." *Id.* Citing mostly federal cases, the court then wrote:

> Passengers in a car driven by the owner do not have standing to challenge a search of the car. Correspondingly, a driver who is not the owner has no standing if the owner is also in the car.... If the owner is absent, a driver

with permission of the owner may have standing.... In sum, we agree that [w]here the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle.

*Campos*, 885 N.E.2d at 598–99 (citations and internal quotations omitted). In Campos, the only evidence regarding ownership of the car came from the defendant, who was the passenger, and the driver of the car, both of whom testified that the car belonged to Campos's brother. *Id.* at 599. The State produced no evidence indicating that the car did not belong to Campos's brother or that Campos did not have permission to use it. *Id.* "Accordingly," the court held, "Campos has standing to challenge the search of the car." *Id.*

Here, the only evidence regarding the ownership of the vehicle was that it was registered to Zearlan Whitfield. Unlike *Campos*, there is no direct evidence either way that either Jackson or Haulcy had permission to use the car. However, there was testimony indicating that Haulcy knew Whitfield and that his use of the car was not without permission, and there is no indication that the car was stolen. We recognize that this is a close case, and that Jackson did not offer direct evidence re-

---

that of standing.'" *Willis v. State*, 780 N.E.2d 423, 427 (Ind.Ct.App.2002) (quoting *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). In contrast, analysis under Article 1, Section 11 of the Indiana Constitution has retained a "standing" requirement. *Id.* (citing *Peterson v. State*, 674 N.E.2d 528, 534 (Ind.1996)). Regardless of whether our analysis is framed in terms of "standing," the question before us is whether Jackson, as a passenger in a car driven by one who was not the owner of the car, may challenge a search of that car.

2. Specifically, when analyzing Fourth Amendment claims, the defendant must demonstrate that he personally has a reasonable expectation of privacy in the place searched. *Willis*, 780 N.E.2d at 427 (citing *Minnesota v. Carter*, 525 U.S. 83, 87–88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998)). In contrast, the Indiana Constitution provides protection for claimed possessions irrespective of the defendant's interest in the place where the possessions were discovered. *Campos*, 885 N.E.2d at 598 (citing *Peterson*, 674 N.E.2d at 534).

garding his permission to use the car. But we also note that the permission to use the car did not appear to be at issue below. Under the facts and circumstances before us, and in light of the intervening holding in *Campos,* we believe that Jackson may challenge the propriety of the search of the car in which he was a passenger.

### D. Inventory Search

■ Turning to the merits of Jackson's challenge to the inventory search of the car, we first observe that it is undisputed that Officer Burton could properly initiate a stop of the car when he observed it disregard a traffic signal. *See State v. Quirk,* 842 N.E.2d 334, 340 (Ind.2006) (recognizing that police officers may stop a vehicle when they observe even minor traffic violations). At issue here is the inventory search of the car performed by the police after it was determined that the car would be impounded.

■ The Fourth Amendment, as applied to the States through the Fourteenth Amendment, generally requires a warrant for a search to be considered reasonable. *Taylor v. State,* 842 N.E.2d 327, 331 (Ind. 2006). There are exceptions to this requirement, but the State bears the burden of proving that a warrantless search falls within one of these exceptions. *Id.* One well-recognized exception to the warrant requirement is a valid inventory search. *Id.* The underlying rationale for the inventory exception is: (1) the protection of private property in police custody; (2) the protection of police against claims of lost or stolen property; and (3) the protection of police from possible danger. *Id.* at 330–31. The threshold question in determining the propriety of an inventory search is whether the impoundment itself was proper. *Id.* at 331. An impoundment is proper when it is either part of the routine administrative caretaking functions of the police or when it is authorized by statute. *Id.*

Here, the impoundment was authorized by Indiana Code section 9–18–2–43(a) (2004), which provides:

Notwithstanding any law to the contrary but except as provided in subsection (b),[3] a law enforcement officer authorized to enforce motor vehicle laws who discovers a vehicle required to be registered under this article that does not have the proper certificate of registration or license plate:

(1) shall take the vehicle into the officer's custody; and

(2) may cause the vehicle to be taken to and stored in a suitable place until:

(A) the legal owner of the vehicle can be found; or

(B) the proper certificate of registration and license plates have been procured.

Officer Burton testified that the car in which Jackson was a passenger had a license plate which was expired, and he confirmed with dispatch that, according to BMV records, the license plate was expired. The fact that Jackson offered evidence to the contrary is immaterial, as our standard of review demands that we view conflicting evidence which is most favorable to the trial court's ruling. *See Hirshey,* 852 N.E.2d at 1012. The bottom line is that there was evidence that the license plate on the car was expired, and the controlling statute authorized, if not required, the police decision to impound the

---

**3.** Subsection (b) provides, "Except as provided in IC 9–21–21–7(b), a law enforcement officer who discovers a vehicle in violation of the registration provisions of this article has discretion in the impoundment of any of the following: ... (1) Perishable commodities ... (2) Livestock."

vehicle. *See Widduck v. State*, 861 N.E.2d 1267, 1270 (Ind.Ct.App.2007) (holding that Indiana Code section 9–18–2–43(a) required police to take into custody vehicle which had neither license plate nor registration).

■ Our analysis does not end there, however. Even if there is a lawful custodial impoundment of the vehicle, the constitutional requirement of reasonableness requires that the inventory search itself must be conducted pursuant to standard police procedures. *Combs v. State*, 878 N.E.2d 1285, 1290 (Ind.Ct.App.2008). This ensures that the inventory is not a pretext for a general rummaging in order to discover incriminating evidence. *Id.*

Here, Jackson argues that the inventory search was simply a pretext for rummaging, noting that Haulcy had refused to consent to a search of the car and also noting what he sees as irregularities with the search. At the hearing on the motion to suppress, the State introduced into evidence a copy of the Kokomo Police Department's policy regarding the towing and impoundment of vehicles. This policy authorizes officers to impound cars "[w]hen authorized by State law or local ordinance." Ex. Vol., Ex. 2, p. 9. As noted above, the tow was authorized by State statute. Moreover, the policy states that "[i]f the vehicle is being driven on the street, a regular traffic citation will be issued to the driver and the officer may have the vehicle towed by a towing service authorized by the Department." *Id.* at 12. Here, the car was being driven on the streets, and the policy clearly authorized the towing of the car.

The policy also states that "[w]henever a vehicle is towed at the direction of an officer, a written record of that tow will be made *by the requesting officer*." *Id.* at 15 (emphasis added). Except when a vehicle is towed because it was involved in an accident, "whenever a vehicle is towed at the direction of an officer, a **KOKOMO POLICE DEPARTMENT** *INVENTORY/TOW CARD* will be completed. The tow card will show the time, date, location, requesting officer, reason for the tow, towing service, vehicle information, and location of the vehicle." *Id.* at 16. Thus, there is a standard police policy that officers complete an inventory of towed vehicles.

At the hearing on the motion to suppress, Jackson offered into evidence a document titled, "Police Officer/Rental Property Report," with the subtitle "(On Abandoned / Impounded Vehicles)." Ex. Vol., Ex. B. This document appears to be a form provided by the BMV. Although Jackson now asserts that this is not the "inventory/tow card" contemplated by the policy, he does not further support this argument. Regardless, the document is a form which has all of the information required to be on the tow card, including the time, date, location, requesting officer, vehicle information, and location of the vehicle. Whether or not it is titled a "tow card," it provides for all of the information required by the policy to be on the tow card, and we do not consider this to be a failure to follow the policy.

■ Jackson also claims that the inventory search did not conform to established policy because the requesting officer, Officer Burton, did not make the written record of the tow and inventory. Instead, Officer Tye Darlin ("Officer Darlin") testified that he filled out the inventory report because "Officer Burton was busy doing other matters so I did it to assist him." Tr. p. 71. Standing by itself, this relatively minor deviation from written department policy does not compel us to hold that the inventory was invalid, as it does not suggest that the inventory of the car was a pretext for a general rum-

maging. Moreover, Officer Burton's testimony indicates that he at least reviewed the form filled out by Officer Darlin, because he testified that he found nothing of value in the car that needed to be added to the inventory sheet.

More troubling is the fact that the inventory sheet contains an area with the heading "reason for tow," under which Officer Darlin checked a box labeled "narcotics arrest." Ex. Vol., Ex. B. Under a section labeled, "Explanation of Tow Reason and Vehicle Inventory," are written the words "cocaine in vehicle." *Id.* Although the latter could be simply a reference to the inventory of the vehicle, i.e. cocaine, the former suggests that Officer Darlin believed the car was towed because of the cocaine found in the car, not because of the expired plates. Jackson now claims this proves that the inventory of the car was simply a pretext. We disagree.

Whatever the implication of the form, Officer Burton clearly testified that the vehicle was towed "[d]ue to having expired plates." Tr. p. 42. Although the information contained on the inventory sheet might have been a reason for the trial court to disbelieve Officer Burton's testimony regarding the reason that the vehicle was towed, the trial court obviously chose to believe Officer Burton's testimony that the car was towed because of the expired plates. Considering that the inventory sheet was not completed by Officer Burton, we cannot conclude that the reasons listed on the inventory sheet overrides Officer Burton's direct testimony.

 In the end, we conclude that the inventory search of the car did not violate Jackson's rights under the Fourth Amendment. The towing of the car was authorized by statute and by police policy, and the inventory of the vehicle was similarly authorized by established police policy. Although this policy was not thoroughly

followed, this alone does not establish that the inventory was a pretext. Inventory searches are not always unreasonable when standard procedures are not followed. *United States v. Mayfield,* 161 F.3d 1143, 1145 (8th Cir.1998); *see also Whren v. United States,* 517 U.S. 806, 816, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) ("it is a long leap from the proposition that following regular procedures is some evidence of lack of pretext to the proposition that failure to follow regular procedures proves (or is an operational substitute for) pretext."). Similarly, under Article 1, Section 11 of the Indiana Constitution, we conclude that the actions of the police in conducting the inventory, when viewed in light of the totality of the circumstances, were reasonable despite the failure to fully follow the police policy.

 We take this opportunity to repeat our admonition that inventory searches performed at the scene invite challenges. *See Widduck,* 861 N.E.2d at 1271. Inventory searches conducted at the impound lot by an officer assigned to such duties are greatly preferred to searches conducted at the scene, without a warrant, by the arresting officer. *Id.* By performing inventories at the scene and by failing to follow the written policies of their departments, officers risk suppression of any evidence recovered during such inventories. Ultimately, however, under the facts and circumstances before us, and viewing the contradicting evidence in the light most favorable to the trial court's decision to admit the evidence, as we must, we cannot conclude that Jackson's rights under either the federal or state constitutions were violated. The trial court did not abuse its discretion in admitting the evidence obtained as a result of the inventory of the car in which Jackson was a passenger.

## II. Jury Instructions

 Jackson also claims that the trial court erred in refusing to give two of his proposed instructions to the jury. The manner of instructing a jury is left to the sound discretion of the trial court, and we review its decision only for an abuse of that discretion. *Stringer v. State*, 853 N.E.2d 543, 548 (Ind.Ct.App.2006). When the trial court refuses a tendered instruction, we must consider the following: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Id.* Jury instructions are to be considered as a whole and in reference to each other, and an error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id.*

The first proposed instruction at issue provided in relevant part:

It is a defense for a person charged with delivery or possession of cocaine within one thousand feet of school property . . . that:

(1) a person was briefly in, on, or within one thousand (1000) feet of school property . . . and

(2) no person under eighteen (18) years of age at least three (3) years junior to the person was in, on, or within one thousand (1000) feet of the school property . . . at the time of the offense.

Appellant's App. p. 85.

The State admits that this instruction tracks the language of Indiana Code section 35-48-4-16(b) (2004). Thus, there is no argument that this proposed instruction is not a correct statement of the law. Nor does the State argue that the substance of the proposed instruction was covered by

any other instructions. Instead, the State claims that there was no evidence in the record to support the giving of the instruction. The trial court also appeared to base its decision not to give the instruction upon the fact that there was "absolutely no evidence whatsoever" regarding whether anyone under the age of eighteen was at the school at the time Jackson was arrested. Tr. p. 257.

A similar issue was before the court in *Stringer*, where the defendant was charged with possession within 1,000 feet of a public park. There, the trial court refused an instruction similar to that proposed by Jackson. Upon appeal, the court noted that the defendant did not provide any direct evidence with regard to whether anyone was at or near the park, but instead elicited testimony from one of the State's witnesses that it was unknown whether anyone under the age of eighteen was in the park at the time the defendant had been arrested. *Stringer*, 853 N.E.2d at 549. The court concluded that the evidence did not support the giving of the instruction. *Id.*

 Jackson claims that *Stringer* is distinguishable because the traffic stop at issue here occurred between 7:00 p.m. and 8:00 p.m., when school was not in session, "and therefore children should not be present." Appellant's Br. p. 15. We cannot agree. Jackson relies solely upon the fact that he was stopped in the evening. Although school is usually not in session at such hours, children are often at school after hours for extracurricular activities. Here, there was no evidence regarding whether there were any children under the age of eighteen at the school, and we therefore conclude that the trial court did not err in concluding that there was no evidence supporting the giving of Jack-

son's first proposed instruction.[4] *See Stringer,* 853 N.E.2d at 549–50.

■ Next, Jackson claims that the trial court erred in refusing to give a second proposed instruction, which provided in relevant part:

> It is a defense for a person charged with delivery of cocaine or possession of cocaine within one thousand feet of school property ... that ... a person was in, on, or within one thousand (1000) feet of school property ... at the request or suggestion of a law enforcement officer or an agent of a law enforcement officer.

Appellant's App. p. 86. The State does not deny that this instruction tracks Indiana Code section 35–48–4–16(c), but again argues that there was no evidence supporting this instruction.

Jackson claims that there is no evidence that the intersection where Haulcy ran the red light was within 1,000 feet of the school. Whether or not this is the case, the evidence established that the parking lot where Haulcy finally stopped was within 1,000 feet of the school. There is no evidence that Officer Burton, or any one else, requested or suggested that Haulcy pull into the parking lot which was near the school. To the contrary, Officer Burton testified that Haulcy did not immediately stop the car when he activated his flashing lights, nor did it immediately stop when he later activated his siren. Instead, Haulcy traveled two or three blocks from the location of the red light before he pulled into the parking lot. Without any evidence that the police or their agents requested or suggested that Haulcy drive to an area which was within 1,000 feet of the school, the defense set forth in Jackson's proposed instruction was inapplicable, and the trial court did not abuse its discretion in refusing to give this instruction to the jury.

### Conclusion

The trial court did not err in admitting evidence obtained as a result of the inventory search of the car in which Jackson was a passenger. Nor did the trial court did err in refusing to give to the jury the two instructions proposed by Jackson.

Affirmed.

MAY, J., and VAIDIK, J., concur.

**4.** Jackson also cites *Beets v. State,* 872 N.E.2d 222 (Ind.Ct.App.2007) (Table), *trans. denied,* in support of his argument. As noted by the State, *Beets* was an unpublished memorandum decision. Pursuant to Indiana Appellate Rule 65(D), a memorandum decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case. Although our memorandum decisions are now available online at http://www.in.gov/judiciary/opinions/, and have recently become available through commercial providers such as Westlaw, they are still unpublished memorandum decisions. Practitioners cannot assume that a decision from this court found online or in a commercial database is citable as precedent.