Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEYS FOR APPELLANT:

**MARK SMALL**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana



FILED
Oct 12 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| CHARLES DAVIS, SR., | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 03A05-1111-CR-639 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE BARTHOLOMEW SUPERIOR COURT 1
The Honorable Chris D. Monroe, Judge
Cause No. 03D01-1101-FA-520

**October 12, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Charles Davis, Sr. ("Davis") was convicted in Bartholomew Superior Court of Class B felony dealing in methamphetamine and sentenced to twenty years incarceration. Davis appeals and presents eight issues, which we restate as:

I.      Whether the trial court abused its discretion in admitting evidence found during a search of the vehicle Davis possessed;

II.     Whether the trial court abused its discretion in admitting evidence of items that were destroyed;

III.    Whether the trial court abused its discretion in overruling Davis's chain-of-custody objections to the admission of certain evidence;

IV.     Whether the trial court abused its discretion in admitting evidence of a statement made by Davis to the police while in custody even though Davis had not been advised of his Miranda rights;

V.      Whether the trial court abused its discretion in answering a question by the jury during deliberation;

VI.     Whether the State presented sufficient evidence to support Davis's conviction;

VII.    Whether the sentence imposed by the trial court is inappropriate; and

VIII.   Whether the trial court abused its discretion in denying Davis's motion to correct error wherein Davis claimed juror misconduct.

We affirm.

## Facts and Procedural History

On the morning of September 16, 2010, Edinburgh Police Officer Jimmy Roberts ("Officer Roberts") was on patrol when he saw a white Ford Escort station wagon parked in the parking lot of the Edinburgh Sports and Recreation complex. Officer Roberts saw a man, later identified as Davis, walking outside the vehicle with what appeared to be a water jug. As Officer Davis approached in his patrol car, he noticed that a female passenger was attempting to "slump" down in the seat of the car to hide herself from

2

view. Officer Roberts then parked his patrol car, and got out to ask Davis if there was a problem. Davis replied that the car had overheated and stated that another individual had gone to an auto parts store to get spark plugs. Davis also appeared to be nervous and was pacing as he spoke to the officer. Because of Davis's behavior, and because he knew that defective spark plugs do not cause a car to overheat, Officer Roberts became suspicious of Davis. Officer Roberts radioed Davis's information to dispatch and was informed that there was an outstanding warrant for Davis's arrest. Officer Roberts then placed Davis in handcuffs and did a pat-down search on Davis. As a result of this search, Officer Roberts found a glass pipe containing a white residue.

Officer Roberts then approached the white station wagon and noticed the odor of burnt marijuana. The female passenger, later identified as Nakeesha Brantley ("Brantley") had in her possession marijuana and syringes. Officer Roberts placed Brantley under arrest too. Edinburgh Police Chief Pat Pantke ("Chief Pantke") arrived on the scene to assist Officer Roberts. Sometime thereafter, Edinburgh Police Officer Doyne Little ("Officer Little") arrived to assist Chief Pantke with the search of the station wagon. Officer Roberts then began to transport Davis and Brantley to the police station. As he did so, Davis, without being questioned, told Officer Roberts that there were two "tanks" in the back of the station wagon and that "[Davis] didn't want to see anyone get hurt." Tr. p. 312. Officer Roberts gave this information to Chief Pantke, who then summoned the clandestine laboratory team of the Indiana State Police ("ISP").

ISP Trooper Thomas Egler ("Trooper Egler") arrived and assisted in removing from the station wagon numerous items commonly used to manufacture

3

methamphetamine, including air tanks modified to store anhydrous ammonia, sulfuric acid, pseudoephedrine, protective gloves, lithium batteries, tools used to pry batteries apart, scales used to measure chemicals, and scales commonly used to measure methamphetamine. Also discovered in the station wagon was a manual describing how to manufacture methamphetamine. The manual contained red underlining on parts describing how to use vitamins in the manufacture of methamphetamine. Vitamins were found in the station wagon and on Davis. The police also found inside the station wagon a baggie containing over thirteen grams of methamphetamine, a handgun, and ammunition. Three pre-paid mobile phones were also located in the car. Additionally, Davis had a large amount of cash on his person.

On January 24, 2011, the State charged Davis as follows: Count I: Class B felony dealing in methamphetamine, and Count II: Class C felony possession of methamphetamine while possessing a firearm. The State subsequently amended the charging information to add Count III: Class A felony dealing in methamphetamine in a public park, Count IV: Class C felony possession of chemical reagents or precursors with intent to manufacture a controlled substance, and Count V: Class D felony possession of a precursor.

Prior to trial, Davis filed a motion to suppress evidence obtained from the station wagon, claiming that the search and seizure of the vehicle was unsupported by probable cause. The trial court denied this motion to suppress. Davis later filed a motion to suppress any evidence regarding items the ISP had destroyed. Davis also filed a motion

to suppress his statement to the police. The trial court denied these motions in relevant part.

A jury trial was held on June 28 through June 30, 2011. At the conclusion of the trial, the jury found Davis guilty all counts except Count III: Class A felony dealing in methamphetamine in a public park. As to that count, the jury was unable to reach a verdict. The trial court declared a mistrial as to Count III, and the State subsequently dismissed this count.

At a sentencing hearing held on October 18, 2011, the trial court found that Davis's convictions in Counts II, IV, and V were factually included in Count I, and entered judgment only as to this count. The trial court then sentenced Davis to twenty years on this conviction. That same day, Davis filed a *pro se* motion to correct error, claiming *inter alia* that there had been juror misconduct because one of the jurors claimed to have known the prosecuting attorney. Two days later, the trial court set Davis's motion for a hearing on November 29, 2011. The trial court entered an order denying Davis's motion the day after the hearing. Davis now appeals.

## I. Search of the Station Wagon

Davis first claims that the evidence seized from the station wagon should not have been admitted at trial because the vehicle was searched without either Davis's consent or probable cause. Questions regarding the admission of evidence are left to the sound discretion of the trial court, and on appeal, we review the court's decision only for an abuse of that discretion. Wells v. State, 904 N.E.2d 265, 269 (Ind. Ct. App. 2009). The trial court abuses its discretion only if its decision is clearly against the logic and effect of

5

the facts and circumstances before it, or if the court has misinterpreted the law. Id. Our review of rulings for the admissibility of evidence is essentially the same regardless of whether the challenge is made through a pretrial motion to suppress or by an objection at trial. Jackson v. State, 890 N.E.2d 11, 15 (Ind. Ct. App. 2008). In either case, we will not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling. Id. However, we also consider any undisputed evidence that is favorable to the defendant. Id. Additionally, we may consider foundational evidence introduced at trial in conjunction with any evidence from a suppression hearing that is not in direct conflict with the trial evidence. Kelley v. State, 825 N.E.2d 420, 427 (Ind. Ct. App. 2005).

To challenge a search, a defendant must show a subjective and objective expectation of privacy in the premises. Campos v. State, 885 N.E.2d 590, 598 (Ind. 2008) (citing Smith v. Maryland, 442 U.S. 735, 740 (1979)). A driver with permission of the owner may have standing to challenge a search, even if the owner is absent. Id. (citing United States v. Rubio-Rivera, 917 F.2d 1271, 1275 (10th Cir. 1990); United States v. Williams, 714 F.2d 777, 779 n.1 (8th Cir. 1983); United States v. Portillo, 633 F.2d 1313, 1317 (9th Cir. 1980)). Thus, "'[w]here the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle.'" Id. (quoting Rubio-Rivera, 917 F.2d at 1275).

Here, however, Davis was not the owner of the vehicle. Instead, the vehicle was owned by Adele Roberts, who lived in Seymour, Indiana. The owner had left the car at

6

her father's house in Columbus, Indiana, and had spoken with Davis about selling the car to him, but no deal was reached, and she never gave Davis permission to use the car. Because Davis offered no evidence indicating that he had permission of the owner of the vehicle, he had no reasonable expectation of privacy in the vehicle and no standing to challenge the search. Cf. id. (concluding that defendant had standing to challenge search of car he was in where the only evidence regarding ownership indicated that the car belonged to the defendant's brother and that defendant had permission to use the car and where the State presented no evidence to the contrary). Thus, the trial court did not abuse its discretion in admitting into evidence the items found by the police during their search of the station wagon.[1]

## II. Admission of Evidence Regarding Destroyed Items

Davis next claims that the trial court abused its discretion when it admitted evidence regarding items that were taken by the ISP and later destroyed. Davis specifically complains that, although several items were destroyed by the ISP, testimony and photographs thereof were admitted into evidence.[2]

In Jones v. State, we explained:

Criminal defendants have the right to examine physical evidence in the possession of the State under the Fourteenth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution.

---

[1] Even if Davis had standing to challenge the search of the vehicle, he would not prevail. Davis was found in possession of drug paraphernalia and Officer Roberts smelled the odor of burnt marijuana as he approached the car. This would be sufficient to support a finding of probable cause to search the vehicle. See State v. Hawkins, 766 N.E.2d 749, 752 (Ind. Ct. App. 2002) (holding that the odor of burnt marijuana emanating from a vehicle may give rise to probable cause to search that vehicle).

[2] Among these items were: protective gloves, coffee filters, a bottle of sulfuric acid, the two air tanks and the fittings and adapters that went along with the tanks, a digital scale, pseudoephedrine pills, plastic bags, one lithium battery, and the manual describing how to manufacture methamphetamine.

However, the State does not have an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution. In the context of hazardous chemicals and materials, tension arises between the practical need for destruction and the threat of prejudice to the substantial rights of a criminal defendant, which necessarily occurs when evidence is destroyed.

957 N.E.2d 1033, 1037 (Ind. Ct. App. 2011) (citations and internal quotations omitted).

In an attempt to resolve this tension, our General Assembly enacted Indiana Code section 35-33-5-5. See Jones, 957 N.E.2d at 1037.

Subsection 5(e) sets forth requirements that must be satisfied before evidence may be destroyed:

(e) A law enforcement agency may destroy or cause to be destroyed chemicals, controlled substances, or chemically contaminated equipment (including drug paraphernalia as described in IC 35-48-4-8.5) associated with the illegal manufacture of drugs or controlled substances without a court order if all the following conditions are met:

(1) The law enforcement agency collects and preserves a sufficient quantity of the chemicals, controlled substances, or chemically contaminated equipment to demonstrate that the chemicals, controlled substances, or chemically contaminated equipment was associated with the illegal manufacture of drugs or controlled substances.

(2) The law enforcement agency takes photographs of the illegal drug manufacturing site that accurately depict the presence and quantity of chemicals, controlled substances, and chemically contaminated equipment.

(3) The law enforcement agency completes a chemical inventory report that describes the type and quantities of chemicals, controlled substances, and chemically contaminated equipment present at the illegal manufacturing site.

The photographs and description of the property shall be admissible into evidence in place of the actual physical evidence.

I.C. § 35-33-5-5(e).

8

This statute also contains a provision concerning the maintenance of certified records and two-witness attestation:

> (g) The law enforcement agency disposing of property in any manner provided in subsection (b), (c), or (e) shall maintain certified records of any disposition under subsection (b), (c), or (e). Disposition by destruction of property shall be witnessed by two (2) persons who shall also attest to the destruction.

I.C. § 35-33-5-5(g).

In the present case, Davis claims that the State failed to properly abide by the requirements of Subsection 5(g), and that the evidence regarding the items destroyed is therefore inadmissible. Specifically, he claims, "[t]here is no attestation, as required by I.C. § 35-33-5-5(g) as to the destruction of the items. . . . There is no indication that the . . . destruction of the property was witnessed by two persons." Appellant's Br. at 16. Davis argues that the failure to properly follow the procedures set out in Subsection 5(g) requires that the evidence be excluded from evidence.

This argument has already been considered and rejected by this court in Jones. As we held in Jones, Subsection 5(g) provides no remedy for noncompliance. 957 N.E.2d at 1038. Whereas Subsection 5(e) predicates admission of evidence upon satisfaction of the listed conditions, Subsection 5(g) contain no such limiting language. Jones, 957 N.E.2d at 1038. "In the absence of such language, we decline to premise admissibility of evidence upon the satisfaction of the requirements listed in this provision." Id. Pursuant to Jones,[3] the admission of the evidence is not conditional on compliance with Subsection 5(g). Davis's argument that the evidence destroyed by the ISP was inadmissible because

---

[3] We decline Davis's argument to reconsider our holding in Jones.

9

of the failure to comply with Subsection 5(g) therefore fails, and the trial court did not err in admitting this evidence.

### III. Chain of Custody

Davis next contends that the trial court abused its discretion in overruling Davis's chain-of-custody objections to the admission of evidence analyzed by the ISP laboratory. Physical evidence is admissible if evidence regarding its chain of custody strongly suggests the exact whereabouts of the evidence at all times. Culver v. State, 727 N.E.2d 1062, 1067 (Ind. 2000). To establish a chain of custody, the State must give "reasonable assurances that the property passed through various hands in an undisturbed condition." Id. The State establishes an adequate chain of custody if it "accounts for the evidence at each stage from its acquisition, to its testing, and to its introduction at trial." Espinoza v. State, 859 N.E.2d 375, 382 (Ind. Ct. App. 2006). However, the State need not establish a perfect chain of custody, and minor gaps go to the weight of the evidence and not its admissibility. Culver, 727 N.E.2d at 1067. Moreover, "there is a presumption of regularity in the handling of exhibits by public officers." Filice v. State, 886 N.E.2d 24, 34 (Ind. Ct. App. 2008) (citation omitted), trans. denied. Thus, "[t]o mount a successful challenge to the chain of custody, one must present evidence that does more than raise a mere possibility that the evidence may have been tampered with." Troxell v. State, 778 N.E.2d 811, 814 (Ind. 2002).

Davis's argument is focused on the items that were collected by the police at the scene and then later shipped to the ISP laboratory for testing. Davis claims that there was insufficient evidence presented regarding the chain of custody of this evidence because

control of the scene passed from Officer Roberts to Chief Pantke, then to Officer Little. However, Davis presents nothing but mere speculation with regard to whether any evidence was tampered with. Instead, it appears that from the time of Officer Roberts' initial encounter, the police controlled the scene, and the scene was never abandoned or accessed by anyone other than the police. Davis has therefore failed to present any evidence that does more than raise a mere possibility that evidence may have been tampered with. See Troxell, 778 N.E.2d at 814.

The same is true with regard to Davis's complaint regarding how Officer Little handled the evidence at the police station. Davis complains that Officer Little "left [evidence] on a counter." Appellant's Br. at 19. However, Officer Little testified that:

> all evidence recovered at the scene was left in my possession and I transported it to the Edinburgh Police Department where I then photographed an overview of all the property recovered and I booked it into the [computerized] database, bagged it, and then started taking it to the lockers. Since I'm [in control] over the property room, I took it straight to the property room. And that's where the evidence has been with the exception of any evidence that has left to go to be transported to the State Police lab for testing purposes or to court here.

Tr. pp. 397-98. Officer Little further explained that his inventory process takes place on a counter, but that on this counter he separates items, photographs them, and individually bags the items. Under these facts and circumstances, the trial court did not abuse its discretion in determining that the State had given "reasonable assurances that the property passed through various hands in an undisturbed condition." Culver, 727 N.E.2d at 1067.

11

Davis also attacks the manner in which Officer Little sent certain exhibits to the ISP laboratory. Davis notes that an evidence clerk at the laboratory, not the ISP forensic chemist who testified at trial, actually received the items from Officer Little. He also complains that Officer Little failed to bring a certain form with him to the ISP laboratory when he delivered the items and had to later fax this form to the laboratory. With regard to the faxed form, Davis fails to explain how this had any effect on the chain of custody. Officer Little testified that, in order for the ISP laboratory to test the samples, Trooper Egler had given him a "Property Record and Receipt" form that Trooper Egler had completed. Although Officer Little forgot to bring this form with him when he delivered the evidence to the laboratory, both he and Trooper Egler later faxed the completed form to the laboratory. Moreover, Officer Little testified that his failure to bring the form with him had no effect on the handling of the evidence he gave to the laboratory. And the laboratory chemist testified that the items she received from the Edinburgh Police Department were still sealed when she tested them. From this, we cannot say that the trial court abused its discretion in concluding that the State established a proper chain of custody of the items sent to the ISP laboratory. At most, Davis has shown minor gaps in the chain of custody, which go to the weight, not the admissibility of the evidence. See Culver, 727 N.E.2d at 1067.

## IV. Statement to the Police

Davis also claims that the trial court abused its discretion when it allowed Davis's statement to the police into evidence. Specifically, Davis refers to his statement to Officer Roberts that there were two "tanks" in the back of the station wagon and that

12

"[Davis] didn't want to see anyone get hurt." Tr. p. 312. Davis notes correctly that at the time he gave that statement, he was in custody but had not been advised of his Miranda rights.

Our supreme court has explained that, under Miranda, "[s]tatements that are the product of custodial interrogation prior to the advisement of the Fifth Amendment guarantee against self-incrimination are generally inadmissible." Bailey v. State, 763 N.E.2d 998, 1001 (Ind. 2002) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). A police officer is only required to give Miranda warnings when a defendant is both (1) in custody and (2) subject to interrogation. Furnish v. State, 779 N.E.2d 576, 578-79 (Ind. Ct. App. 2002), trans. denied.

Here, the State does not deny that Davis was in custody at the time of his statement; however, the State does deny that Davis was subject to interrogation at the time of his statement. We agree with the State. There is no indication in the record that Officer Roberts asked Davis any question or subjected him to any form of interrogation at the time Davis made his statement. To the contrary, Officer Roberts testified at the suppression hearing that he did not question Davis. Tr. p. 53. Thus, Davis's statement to the Officer Roberts was spontaneous and voluntary. "The concept of custodial interrogation does not operate to extend the Miranda safeguards to spontaneous voluntary statements made in the presence of police officers which are not in response to questions posed by law enforcement officers." Gregory v. State, 540 N.E.2d 585, 596 (Ind. 1989); accord Patterson v. State, 563 N.E.2d 653, 656 (Ind. Ct. App. 1990). This is true despite

13

the fact that a defendant is in custody at the time of his statement. Gregory, 540 N.E.2d at 596.

Because Davis's statement was not the product of a custodial interrogation, the fact that he was not advised of his Miranda rights does not render his statement inadmissible. Accordingly, the trial court did not abuse its discretion when it admitted Davis's statement into evidence.

## V. Jury Question

Davis next claims that the trial court improperly answered a question asked by the jury during deliberations. If the jury requests additional guidance from the trial court, "'the proper procedure is for the judge to notify the parties so they may be present in court before the judge communicates with the jury, and the parties should be informed of his proposed response to the jury.'" Johnson v. State, 674 N.E.2d 180, 183 (Ind. Ct. App. 1996) (citing Grey v. State, 553 N.E.2d 1196, 1198 (Ind. 1990)); see also Henri v. Curto, 908 N.E.2d 196, 200 (Ind. 2009) (noting that when the jury directs a question to the trial court, the better practice is for the judge to notify the parties before sending his response to the jury).

Here, the trial court did precisely that. It brought both parties into the courtroom outside the presence of the jury, where they discussed the proper response to the jury's question, which was: "Regarding Count One, does the knowing and intentional manufacture of methamphetamine need to have occurred within Bartholomew County and only in Bartholomew County." Tr. p. 732; Appellant's App. p. 286. After discussion amongst the parties, the trial court concluded that "the answer to that question is no." Tr.

p. 734; Appellant's App. p. 286. On appeal, Davis claims that the trial courts answer "effectively relieved the State of its burden of proof as to one of the elements of the offense with which Davis was charged and upon which he was convicted and sentenced." Appellant's Br. at 22-23.

However, it is well settled that venue is *not* an element of the offense, and the State may establish venue by a preponderance of the evidence and need not prove it beyond a reasonable doubt. Neff v. State, 915 N.E.2d 1026, 1032 (Ind. Ct. App. 2009), adhered to on reh'g, 922 N.E.2d 44 (Ind. Ct. App. 2010). Davis notes, however, that Officer Little indicated on a document he submitted to the ISP that the county of the occurrence was Johnson County. Officer Little explained at trial, however, that this was simply a mistake on his part. And there was evidence presented at trial that the City of Edinburgh covers areas in the counties of Johnson, Bartholomew, and Shelby. And there was testimony by several witnesses that Davis and the station wagon were in Bartholomew County during the time at issue here. Moreover, our supreme court has noted:

> Venue is not limited to the place where the defendant acted. To the contrary, the legislature may provide for concurrent venue when elements of the crime are committed in more than one county. Similarly, where the precise location of the act is unknowable, a defendant may not avoid trial on this basis.

Baugh v. State, 801 N.E.2d 629, 631-32 (Ind. 2004) (citation omitted). Thus, the trial court's answer to the jury was correct; the jury was not required to find that Davis's criminal manufacture of methamphetamine occurred in and only in Bartholomew County.

See id. And there was ample evidence that Davis was found in possession of all of the items required to manufacture methamphetamine in Bartholomew County.

## VI. Sufficiency of the Evidence

Davis next claims that the State failed to present evidence sufficient to support his conviction for Class B felony dealing in methamphetamine by manufacturing. Upon a challenge to the sufficiency of evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Id.

In arguing that the evidence is insufficient to support his conviction, Davis simply points to evidence that does not favor the jury's verdict, i.e. that Davis did not have the keys to the station wagon, that the station wagon was owned by another person, that none of the items were tested for Davis's fingerprints, and that there was no testimony that anyone witnessed Davis actually manufacture methamphetamine.

However, the evidence favoring the jury's verdict, and the reasonable inferences to be drawn therefrom, are sufficient to support Davis's conviction. Davis was found in possession of a vehicle containing equipment and materials used to manufacture methamphetamine, including an air tank modified to contain anhydrous ammonia, pseudoephedrine, sulfuric acid, and a lithium battery. In addition, the police found tools

16

used to pry open batteries, scales, and an instruction book on how to manufacture methamphetamine. Also discovered in the vehicle was a large amount of methamphetamine. Davis had paraphernalia and a large amount of cash on his person. He also spontaneously warned the police about the air tanks in the vehicle. From this evidence, the jury could reasonably conclude that Davis knowingly or intentionally manufactured methamphetamine. See Ind. Code § 35-48-4-1.1(a) ("A person who . . . knowingly or intentionally . . . manufactures . . . methamphetamine, pure or adulterated . . . commits dealing in methamphetamine, a Class B felony[.]").

## VII. Appropriate Sentence

Citing Indiana Appellate Rule 7(B), Davis also claims that his sentence is excessive. Pursuant to Appellate Rule 7(B), we may revise a sentence otherwise authorized by statute if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Although we have the power to review and revise sentences, "[t]he principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). On appeal, it is the defendant's burden on appeal to persuade us that the sentence imposed by the trial court is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006). This is a burden that Davis has failed to meet.

17

Davis attempts to minimize the nature of his offense, noting simply that there was testimony that there were no children in the park at the time Davis was apprehended. However, this overlooks many other facts that underscore the serious nature of Davis's offense. Davis was in possession of a vehicle that contained a methamphetamine lab, various precursors, and a large amount of methamphetamine. Even Davis himself was aware of the danger presented by the air tanks when he warned the police regarding their presence. The car also contained a handgun.

Davis's character further justifies the sentence imposed by the trial court. Davis has a significant history of juvenile and adult offenses. As early as 1979, Davis was placed on juvenile probation for burglary and theft. He was later committed to the Indiana Boys School. Davis did not fare any better once he became an adult. From 1984 through 2005, he accumulated convictions for public intoxication, burglary, theft, criminal conversion, multiple charges of driving while intoxicated, resisting law enforcement, driving while suspended, criminal trespass, possession of marijuana, and dealing in a schedule 1 controlled substance. As noted by the State, during this time, there was not a single year in which Davis had not been arrested, convicted, sentenced, serving a sentence, or on probation. Under these facts and circumstances, we cannot say that the trial court's decision to impose a twenty-year executed sentence was inappropriate.

## VIII. Motion to Correct Error

Lastly, Davis claims that the trial court erred in denying his motion to correct error in which he claimed jury misconduct because one of the jurors indicated that she knew

18

the prosecuting attorney. We review a trial court's ruling on a motion to correct error for an abuse of discretion. Nichols v. State, 947 N.E.2d 1011, 1015 (Ind. Ct. App. 2011), reh'g denied.

In his motion to correct error, Davis claimed that there had been jury misconduct because one of the jurors indicated during voir dire that she recognized the prosecuting attorney. Actually, it was the prosecuting attorney who indicated that one of the jurors looked familiar to her. The juror then asked if the attorney had a daughter that attended a certain dance school, indicating that she recognized the attorney from that dance school. Davis, however, did not move to strike the juror for cause, nor did he use any of his remaining peremptory challenges to remove this juror. Thus, he has waived any error with regard to the selection of this juror. See Whiting v. State, 969 N.E.2d 24, 29-30 (Ind. 2012) ("to preserve for appeal a claim that the trial judge erred in denying a challenge for cause, the defendant must demonstrate that he or she either used a peremptory challenge to remove the challenged juror or had already exhausted his or her allotment of peremptories."). Moreover, there was no indication that this particular juror was a friend of the prosecuting attorney—just that they recognized each other because the attorney's daughter attended a certain dance school.

Davis also claimed in his motion to correct error that Trooper Egler conspired with the jurors during deliberations, claiming that there was handwriting from four different individuals on the jury's question form it sent to the trial court. However, the trial court reviewed this form and concluded that it contained the handwriting of a single juror and the trial judge's own handwritten responses. We are certainly in no position to second-

19

guess the trial judge on this matter. In short, Davis has failed to show that the trial court abused its discretion in denying Davis's motion to correct error.

## Conclusion

The trial court did not abuse its discretion in admitting the evidence found during the search of the station wagon, nor did it abuse its discretion in the admission of evidence and testimony regarding items that had been destroyed by the ISP. The trial court also properly overruled Davis's chain-of-custody objections. The statement Davis made to the police while in custody was admissible even though Davis had not been advised of his Miranda rights because Davis was not subject to interrogation by the police at the time. The trial court did not abuse its discretion when it answered in the negative the jury's question regarding whether the entire crime had to have occurred within a particular county. The State presented sufficient evidence to support Davis's conviction for dealing in methamphetamine by manufacturing. The sentence imposed by the trial court was not inappropriate, and the trial court did not abuse its discretion in denying Davis's motion to correct error.

Affirmed.

VAIDIK, J., and BARNES, J., concur.