**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 13 2013, 9:04 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ADAM C. SQUILLER**
Squiller Law Office, P.C.
Auburn, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TYLER BECKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 57A03-1203-CR-124 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE NOBLE SUPERIOR COURT
The Honorable Michael J. Kramer, Judge
Cause No. 57D02-1012-CM-979

**March 13, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Tyler Becker appeals his conviction and sentence for Class A misdemeanor operating while intoxicated. We affirm.

**Issues**

Becker raises three issues, which we consolidate and restate as:

I.     whether evidence obtained during a traffic stop was properly admitted; and

II.    whether he was properly sentenced.

**Facts**

At approximately 12:30 a.m. on December 10, 2010, Officer Carey Coney of the Noble County Sherriff's Department was on patrol in Kendallville. As Officer Coney was making a left turn from Main Street onto North Street, he changed from the right lane to the left lane. Becker then pulled out of a gas station parking lot in front of Officer Coney, requiring Officer Coney to slam on his brakes to avoid an accident. Officer Coney immediately initiated a traffic stop. When Officer Coney approached Becker, he noticed Becker's pupils were dilated and his eyes were bloodshot. Becker told Officer Coney his name and date of birth and suggested that his license might be suspended for failing to pay a ticket. Nothing about the way Becker answered the questions gave Officer Coney any suspicion about anything improper.

When Officer Coney returned to his vehicle to check the validity of Becker's license, Sergeant Johnny Ritchie of the Kendallville Police Department arrived at the scene and suggested that Becker, who was twenty years old, had previously been caught

drinking underage. Although Becker's license was valid, Officer Coney reapproached Becker's car and asked him to step out of the car. As Becker stood up, a cigar-type cigarette fell to the ground. Becker and Officer Coney moved to the back of Becker's car, and Officer Coney again observed that Becker's pupils were dilated. Officer Coney questioned whether Becker had been drinking, and Becker eventually admitted he had smoked marijuana earlier in the day. Officer Coney gave Becker an informed consent advisement, Becker agreed to a chemical test, and a urine test confirmed the presence of cannabinoids.

The State charged Becker with Class A misdemeanor operating while intoxicated in a manner that endangered a person, Class C misdemeanor operating a vehicle with a controlled substance in the body, and disregarding a stop sign as an infraction. Becker filed a motion to suppress, which the trial court denied after a hearing. Following a bench trial, at which Becker objected to the admission of evidence obtained during the stop, Becker was found guilty of the Class A misdemeanor operating while intoxicated charge. The trial court found that the Class C misdemeanor charge merged with the Class A misdemeanor and found in favor of Becker on the infraction. The trial court sentenced Becker to 365 days in jail, with all but ten days suspended, and to 355 days on probation. The executed portion of Becker's sentence was stayed pending appeal, but he was ordered to begin serving his probation immediately. Becker now appeals.

**Analysis**

*I. Admission of Evidence*

3

Becker argues that the trial court should not have admitted evidence obtained during the traffic stop because there was no reasonable suspicion to justify the initial stop and because the stop was unreasonably lengthened. "Our standard of review of rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection: we do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling." Jackson v. State, 890 N.E.2d 11, 15 (Ind. Ct. App. 2008). "However, we must also consider the uncontested evidence favorable to the defendant." Id.

### A. Initial Stop

Becker argues that Officer Coney did not have reasonable suspicion to initiate the traffic stop. "Because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that a traffic law has been violated or that other criminal activity is taking place." Meredith v. State, 906 N.E.2d 867, 869 (Ind. 2009). An officer's decision to stop a vehicle is valid so long as his or her on-the-spot evaluation reasonably suggests that lawbreaking occurred. Id. We review trial court determinations of reasonable suspicion de novo by looking at the totality of the circumstances of each case to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. Armfield v. State, 918 N.E.2d 316, 319 (Ind. 2009).

Becker contends that the near accident was not caused by his driving but by Officer Coney's sudden and unforeseeable decision to change lanes while making the left hand turn onto North Street. Regardless of whether Officer Coney's lane change was

4

proper, the video of the stop taken from Officer Coney's police car shows that Becker pulled into the road and in front of Officer Coney after Officer Coney made the lane change. Officer Coney confirmed this when he testified that he did not think the lane change contributed to the near collision. The video also shows that it was snowing, suggesting the possibility of slippery road conditions, making the manner in which Becker pulled out onto the street even more dangerous. Based on the totality of the circumstances, we agree with the trial court that Officer Coney had reasonable suspicion to initiate the traffic stop.

To the extent Becker asserts that there was no reasonable suspicion because he was not found to have committed any traffic violation by the trial court, reasonable suspicion entails some minimal level of objective justification for making a stop, something more than unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. See Corwin v. State, 962 N.E.2d 118, 120 (Ind. Ct. App. 2011), trans. denied. Therefore, it was not necessary for Becker to have been found to have committed the traffic violation; it was only necessary for Officer Carney to have a minimal level of objective justification for making the stop, which he had.

### B.  Length of the Stop

Becker also argues that Officer's Coney's continued investigation unreasonably prolonged the stop. The Supreme Court has explained:

> A lawful roadside stop begins when a vehicle is pulled over
> for investigation of a traffic violation. The temporary seizure
> of driver and passengers ordinarily continues, and remains
> reasonable, for the duration of the stop. Normally, the stop
> ends when the police have no further need to control the

5

> scene, and inform the driver and passengers they are free to leave. An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

Arizona v. Johnson, 555 U.S. 323, 333, 129 S. Ct. 781, 788 (2009) (internal citation omitted). "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407, 125 S. Ct. 834, 837 (2005)

Here, when Becker pulled out in front of Officer Coney almost causing an accident, Officer Coney initiated the traffic stop and briefly questioned Becker. Although nothing about the way Becker answered the questions gave Officer Coney any suspicion of anything improper, Officer Coney noticed Becker's pupils were dilated and his eyes were bloodshot. Officer Coney then returned to his car to verify the status of Becker's driver's license. While waiting for that information, another police officer informed Officer Coney that Becker, who was twenty years old, had previously been caught drinking underage. Officer Coney remained in his car while he waited for information and prepared paperwork.

Officer Coney then reapproached Becker's car and immediately asked him to step out of the car. As Becker got out of the car, a cigar-type cigarette fell from Becker's lap. From his training and experience, Officer Coney had known people to hollow out these cigars and put marijuana in them. As Officer Coney walked toward the back of Becker's

6

car, he asked Becker where he was headed and how he knew his passenger. Officer Coney asked Becker if he had had anything to drink and asked him to close his eyes. Officer Coney observed that, when Becker opened his eyes, his pupils remained dilated. Officer Coney asked Becker when he had last smoked marijuana, and Becker said earlier in the day. After questioning where Becker worked, Officer Coney requested Becker's consent to a chemical test and Becker agreed. Based on Becker's pulling out in front of Officer Coney, Becker's dilated pupils and bloodshot eyes,[1] and the information about Becker's underage drinking, we conclude that Officer Coney had reasonable suspicion to further investigate and ask Becker to step out of the car.[2]

Becker also asserts that the continued detention violated his rights under the Indiana Constitution.[3] Becker cites State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006), in which Quirk, a truck driver who was stopped because a headlight was out, claimed that his detention after he was advised he was free to leave violated his rights under Article 1, Section 11. The court explained, "A police stop and brief detention of a motorist is reasonable and permitted under Section 11 if the officer reasonably suspects that the

---

[1] Becker asserts that no evidence was presented regarding what it means to have dilated pupils and bloodshot eyes. Officer Coney testified that he had Advanced Roadside Impairment Driving Enforcement training and mentioned various manuals for detecting impairment. Under these circumstances, we believe the testimony regarding Becker's eyes is appropriate for determining whether Officer Coney had reasonable suspicion to further investigate.

[2] Although neither party makes a specific argument regarding the amount of time that had passed, it is notable that only a little over a minute passed from the time Officer Coney asked Becker to step out the car until he asked for Becker's consent to a chemical test and less than eleven minutes passed from the time Becker pulled out in front of Officer Coney until Officer Coney asked for Becker's consent.

[3] The State argues that this issue is waived because Becker did not present a separate analysis to support his assertion that his state constitutional rights were violated. However, we believe that Becker's reliance on Quirk and his general argument relating to the reasonableness of the detention are sufficient to preserve the Indiana constitutional claim.

7

motorist is engaged in, or about to engage in, illegal activity." Quirk, 842 N.E.2d at 340. After considering the various reasons offered by the Trooper for the extended detention, our supreme court concluded, "a combination of irrelevant conduct and innocent conduct, without more, cannot be transformed into a suspicious conglomeration." Id. at 343. Our supreme court concluded, "under the totality of the circumstances the Troopers' detention of Quirk beyond the period necessary to issue a warning ticket and the subsequent search of his truck was unreasonable within the meaning of Article 1, Section 11." Id.

Unlike in Quirk, however, it is not clear that Officer Coney had completed the process of writing the ticket and Becker was not told he was free to leave. Moreover, the manner in which Becker was driving, his dilated pupils and bloodshot eyes, and the report of underage drinking justified the brief detention that followed. Becker has not established that the trial court abused its discretion by admitting evidence from the traffic stop.

## II. Sentence

Becker argues he was sentenced to 365 days in jail, all of which was suspended except ten days, and to an additional 355 days of probation. He asserts that this is a 720-day sentence that exceeds the maximum sentence permitted by Indiana Code Section 35-50-3-1(b), which states, "the combined term of imprisonment and probation for a misdemeanor may not exceed one (1) year."

At the sentencing hearing, the trial court stated, "I will sentence you the 365 days in the Noble County jail and I will suspend all of that accept [sic] for 10 days, with one day credit and I'll place you on probation for 355 days under standard terms . . . ." Tr. p.

8

95. In its written sentencing order, the trial court stated, "defendant shall be committed to the Noble County Jail for 365 days, all suspended except for 10 days, which shall be served, with 1 day(s) credit and the Defendant placed on probation for 355 days under standard terms . . . ." App. p. 75. Although it could have been more precisely stated, we believe the trial court intended to sentence Becker to 365 in jail, with ten days executed and 355 suspended to probation. As our supreme court has recently clarified, such a sentence is not in violation of Indiana Code Section 35-50-3-1(b) because the ten-day term of imprisonment and 355-day suspended sentence do not exceed one year. See Jennings v. State, No. 53S01-1209-CR-526 (Feb. 20, 2013) (holding that "term of imprisonment" for purposes of misdemeanor sentencing does not include suspended time). Becker was properly sentenced to ten days executed and 355 days suspended to probation.

**Conclusion**

The trial court properly admitted evidence obtained during the traffic stop because Officer Coney had reasonable suspicion to initiate the traffic stop and his decision to further investigate was supported by reasonable suspicion. Because Becker's total sentence was 365 days, he was not sentenced in violation of 35-50-3-1(b). We affirm.

Affirmed.

BAKER, J., and RILEY, J., concur.

9